# FEDERAL TRADE COMMISSION *v.* WESTERN MEAT COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

# THATCHER MANUFACTURING COMPANY *v.* FEDERAL TRADE COMMISSION.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

# SWIFT & COMPANY *v.* FEDERAL TRADE COMMISSION.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

Nos. 96, 213, 231. Argued October 25, 26, 1926.—Decided November 23, 1926.

Section 7 of the Clayton Act, October 15, 1914, forbids corporations engaged in interstate commerce to acquire stock of other corporations, so engaged, where the effect may be substantially to lessen competition between them or to restrain such commerce or tend to create a monopoly in it. Section 11 authorizes the Federal Trade Commission to enforce this, as respects corporations other than common carriers, banks and trust companies, and empowers it to order a corporation found violating it to " cease and desist from such violations, and divest itself of the stock held," etc. *Held,*

1. When a corporation has unlawfully acquired all the stock of a competitor, but not its plant or other property, the order properly directs it to divest itself of the stock ownership in such wise as will restore competition, and not leave the corporation in control of the competitor's property, as would happen if it first used the stock to secure such control, and then divested itself of the stock by dissolving the other corporation. P. 557.

2. But where a corporation unlawfully buys its competitor's stock and through it acquires the competitor's property, before the Commission takes action, the Commission is not empowered by the statute to order the corporation to divest itself of the property;

but the remedy, if an unlawful status has resulted, is in the Courts, under the Sherman Act.   Pp. 560, 561.

4 F. (2d) 223, modified and affirmed.
5 F. (2d) 615, affirmed in part, reversed in part.
8 F. (2d) 595, reversed.

CERTIORARI (268 U. S. 685; 269 U. S. 546; ·269 U. S. 548) to review decrees of the Circuit Court of Appeals in proceedings taken in that court under the Federal Trade Commission and Clayton Acts.

No. 96 was a petition by the Western Meat Company to review an order of the Commission requiring the company to divest itself of stock of a competing corporation. The Commission's order was affirmed, with a modification; and the decree is here affirmed with the modification eliminated.

No. 213 was a petition by the Commission to the court below, to enforce a similar order against Thatcher Manufacturing Company.   The decree of the court below is here reversed, in so far as it sustained the order.

No. 231 was a petition by Swift & Company to review a similar order.   The decree of the court below sustaining the order is here reversed.

*Mr. Adrien F. Busick,* with whom *Messrs. Bayard T. Hainer* and *James M. Brinson* were on the brief, for the petitioner in No. 96 and the respondent in Nos. 213 and 231.

*Mr. Edward I. Barry,* with whom *Messrs. Frank L. Horton, Jeremiah F. Sullivan,* and *Theo. J. Roche* were on the brief, for the respondent in No. 96.

*Mr. Herbert Knox Smith* for the petitioner in No. 213.

*Mr. James M. Sheean,* with whom *Messrs. Albert H. Veeder, Henry Veeder,* and *Frank L. Horton* were on the brief, for the petitioner in No. 231.

Mr. Justice McReynolds delivered the opinion of the Court.

I

These causes necessitate consideration of the power of the Federal Trade Commission where it finds that one corporation has acquired shares of a competitor contrary to the inhibition of the Clayton Act, approved October 15, 1914, c. 323, 38 Stat. 730, 731. That Act provides—

"Sec. 7. That no corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce.

"No corporation shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of two or more corporations engaged in commerce where the effect of such acquisition, or the use of such stock by the voting or granting of proxies or otherwise, may be to substantially lessen competition between such corporations, or any of them, whose stock or other share capital is so acquired, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce. . . ."

Section 8 forbids interlocking directors.

"Sec. 11. That authority to enforce compliance with sections two, three, seven and eight of this Act by the persons respectively subject thereto is hereby vested: in the Interstate Commerce Commission where applicable to common carriers, in the Federal Reserve Board where applicable to banks, banking associations and trust companies, and in the Federal Trade Commission where ap-

plicable to all other character of commerce, to be exercised as follows:

"Whenever the commission or board vested with jurisdiction thereof shall have reason to believe that any person is violating or has violated any of the provisions of sections two, three, seven and eight of this Act, it shall issue and serve upon such person a complaint . . . If upon such hearing the commission or board, as the case may be, shall be of the opinion that any of the provisions of said sections have been or are being violated, it shall make a report in writing in which it shall state its findings as to the facts, and shall issue and cause to be served on such person ["person" includes corporation] an order requiring such person to cease and desist from such violations, and divest itself of the stock held or rid itself of the directors chosen contrary to the provisions of sections seven and eight of this Act, if any there be, in the manner and within the time fixed by said order.  . . ."

Section 5 of the Act to create a Federal Trade Commission, approved September 26, 1914, c. 311, 38 Stat. 717, 719, declares unfair methods of competition in commerce unlawful, prescribes the procedure to be followed, and gives the Commission power to require an offending party to cease and desist from such methods. This section is not presently important; the challenged orders sought to enforce obedience to § 7 of the Clayton Act.

## II

*No. 96.* The Western Meat Company, a California corporation, and the Nevada Packing Company, of Nevada, were interstate competitors engaged in manufacturing, selling, and distributing meat products. December 30, 1916, the former purchased all stock of the latter and has continued to hold it. In a proceeding begun November 24, 1919, the Commission found such purchase and con-

tinued ownership contrary to law and entered an order directing—

"That the respondent, Western Meat Company, shall forthwith cease and desist from violating the provisions of Section 5 of said Act of Congress approved September 26, 1914, entitled, 'An Act to create a Federal Trade Commission, to define its powers and duties, and for other purposes,' and also the provisions of Section 7 of said Act of Congress approved October 15, 1914, entitled, 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes,' and particularly to so divest itself absolutely of all capital stock of the Nevada Packing Company as to include in such divestment the Nevada Packing Company's plant and all property necessary to the conduct and operation thereof as a complete, going packing plant and organization, and so as to neither directly or indirectly retain any of the fruits of the acquisition of the capital stock of said Nevada Packing Company, a corporation.

"That in such divestment, no stock or property above mentioned to be divested shall be sold or transferred, directly or indirectly, to any stockholder, officer, director, employee, or agent of, or anyone otherwise directly or indirectly connected with or under the control or influence of, respondent or any of its officers, directors, or stockholders or the officers, directors or stockholders of any of respondent's subsidiaries or affiliated companies."

The court below held this order went beyond the Commission's authority and directed that it be modified by eliminating "the injunction against the acquisition by the petitioner of the plant and property of the Nevada Packing Company."

Respondent maintains that the Commission's authority is strictly limited by the statute and that where there has been an unlawful purchase of stock it can do no more than enter "an order requiring such person to cease and

desist from such violations and divest itself of the stock held:" Also, that the Commission has no power to prevent or annul the purchase of a competitor's plant and business, as distinguished from stock therein. *Wilder Manufacturing Co.* v. *Corn Products Refining Co.,* 236 U. S. 165, 174; *Federal Trade Commission* v. *Beech-nut Packing Co.,* 257 U. S. 441, 453; *Federal Trade Commission* v. *Sinclair Refining Co.,* 261 U. S. 463, 475, are relied upon.

Without doubt the Commission may not go beyond the words of the statute properly construed, but they must be read in the light of its general purpose and applied with a view to effectuate such purpose. Preservation of established competition was the great end which the legislature sought to secure.

The order here questioned was entered when respondent actually held and owned the stock contrary to law. The Commission's duty was to prevent the continuance of this unlawful action by an order directing that it cease and desist therefrom and divest itself of what it had no right to hold. Further violations of the Act through continued ownership could be effectively prevented only by requiring the owner wholly to divest itself of the stock and thus render possible once more free play of the competition which had been wrongfully suppressed. The purpose which the lawmakers entertained might be wholly defeated if the stock could be further used for securing the competitor's property. And the same result would follow a transfer to one controlled by or acting for the respondent.

Although the respondent held all the capital stock, the plant and other property of the Nevada Packing Company had not been acquired. The Commission directed that it so divest itself of all this stock as to include in such divestment the Packing Company's plant and property necessary to the operation thereof, etc. Taken liter-

ally, this goes beyond the situation revealed by the record, but the order must be construed with regard to the existing circumstances. Divestment of the stock must be actual and complete and may not be effected, as counsel for respondent admitted was intended, by using the control resulting therefrom to secure title to the possessions of the Packing Company and then to dissolve it. Properly understood, the order was within the Commission's authority, and the court below erred in directing the elimination therefrom of the above-quoted words. Its decree must be modified accordingly and then affirmed.

*Modified and affirmed.*

III

*No. 213.* The Commission entered complaint against the petitioner, March 1, 1921, and charged that the latter contrary to § 7 of the Clayton Act, first acquired the stock of four competing corporations—Lockport Glass Company, Essex Glass Company, Travis Glass Company and Woodbury Glass Company—and thereafter took transfers of all the business and assets of the first three and caused their dissolution, October 20, 1920, December 18, 1920, and January 13, 1921, respectively. Having found the facts concerning a rather complicated series of transactions, the Commission ruled that the acquisitions of all these stocks were unlawful and ordered the petitioner to cease and desist from ownership, operation, management and control of the assets, properties, rights, etc., of the Lockport, Essex and Travis Glass companies secured through such stock ownership, and to divest itself of the assets, properties, rights, etc., formerly held by them. Also, that it should divest itself of the stock of the Woodbury Glass Company.

The court below held that the last-named company was not in competition with petitioner within the meaning of the statute and modified the order accordingly. Therein we agree and to that extent affirm its decree.

The court further ruled, in effect, that as the stocks of the remaining three companies were unlawfully obtained and ownership of the assets came through them, the Commission properly ordered the holder so to dispossess itself of the properties as to restore prior lawful conditions. With this we cannot agree. When the Commission institutes a proceeding based upon the holding of stock contrary to § 7 of the Clayton Act, its power is limited by § 11 to an order requiring the guilty person to cease and desist from such violation, effectually to divest itself of the stock, and to make no further use of it. The Act has no application to ownership of a competitor's property and business obtained prior to any action by the Commission, even though this was brought about through stock unlawfully held. The purpose of the Act was to prevent continued holding of stock and the peculiar evils incident thereto. If purchase of property has produced an unlawful status a remedy is provided through the courts. Sherman Act, c. 647, 26 Stat. 209; Act to Create a Federal Trade Commission, c. 311, § 11, 38 Stat. 717, 724; Clayton Act, c. 323, §§ 4, 15, 16, 38 Stat. 730, 731, 736, 737; *United States* v. *American Tobacco Co.,* 221 U. S. 106. The Commission is without authority under such circumstances.

*Affirmed in part; reversed in part.*

IV

*No. 231.* A complaint against petitioner, filed November 24, 1919, charged that in 1917 and 1918 it had unlawfully obtained stock in two competing companies—Moultrie Packing Company and Andalusia Packing Company—and, thereafter, through the use of this, obtained title to their business and physical property. The findings support the charge. The Commission ordered—

23468°—27——36

That respondent, Swift & Company, within six calendar months from and after the date of the service of a copy of this order upon it, shall:

(1) Cease and desist from further violating Section 7 of the Clayton Act by continuing to own or hold, either directly or indirectly, by itself or by any one for its use and benefit, any of the capital stock of the Moultrie Packing Company and of the Andalusia Packing Company, or either of them, and cease and desist from holding, controlling and/or operating, or causing to be held, controlled and/or operated by others for its use and benefit, the former property and business either of the said Moultrie Packing Company or of the said Andalusia Packing Company, which have been held, controlled and operated by respondent and its employes and agents, following and as a result of respondent's unlawful acquisition of the capital stocks of said named corporations; and to that end, respondent shall

(2) So divest itself of all the capital stocks heretofore acquired by respondent, including all the fruits of such acquisitions, in whatever form they now are, whether held by respondent or by any one for its use and benefit, of the Moultrie Packing Company, a corporation, and of the Andalusia Packing Company, a corporation, or either of them, in such manner that there shall not remain to respondent, either directly or indirectly, any of the fruits of said acquisitions, including the control and/or operations of said corporations, or either of them, resulting from such acquisitions and/or holdings of such capital stocks.

(3) In so divesting itself of such capital stocks respondent shall not sell or transfer, either directly or indirectly, any of such capital stocks to any officer, director, stockholder, employe or agent of respondent, or to any person under the control of respondent, or to any partnership or

corporation either directly or indirectly owned or controlled by respondent.

. The court below denied a petition for review and the matter is here by certiorari.   As all property and business of the two competing companies were acquired by the petitioner prior to the filing of the complaint, it is evident that no practical relief could be obtained through an order merely directing petitioner to divest itself of valueless stock.   As stated in number 213, we are of opinion that under §§ 7 and 11 of the Clayton Act the Commission is without authority to require one who has secured actual title and possession of physical property before proceedings were begun against it to dispose of the same, although secured through an unlawful purchase of stock.   The courts must administer whatever remedy there may be in such situation.   The order of the Commission should have been reviewed and set aside; and judgment to that effect will be entered here.

*Reversed.*

MR. JUSTICE BRANDEIS, dissenting in part.

In my opinion, the purpose of § 7 of the Clayton Act was not, as stated by the Court, merely " to prevent continued holding of the stock and the peculiar evils incident thereto."   It was also to prevent the peculiar evils resulting therefrom.   The institution of a proceeding before the Commission under § 7 does not operate, like an injunction, to restrain a company from acquiring the assets of the controlled corporation by means of the stock held in violation of that section.   If, in spite of the commencement of such a proceeding, the company took a transfer of the assets, the Commission could, I assume, require a retransfer of the assets, so as to render effective the order of divestiture of the stock.   I see no reason why it should not, likewise, do this although the company succeeded in securing the assets of the controlled corporation before

the Commission instituted a proceeding. Support for this conclusion may be found in § 11, which provides for action by the Commission whenever it " shall have reason to believe that any person is violating *or has violated* any of the provisions" of the earlier sections. (Italics ours.)

I think that the decrees in Nos. 213 and 231 should be affirmed.

The CHIEF JUSTICE, MR. JUSTICE HOLMES and MR. JUSTICE STONE join in this dissent.