## GENERAL INV. CO. v. NEW YORK CENT. R. CO.

Circuit Court of Appeals, Sixth Circuit.
January 4, 1928.

1. Monopolies ⊚⟲24(1)—Right to injunctive relief given by Clayton Act to persons threatened with loss or damage by violation of antitrust laws does not extend to suit by stockholder (Clayton Act, § 16 [15 USCA § 26]).

The right given by Clayton Act, § 16 (15 USCA § 26), to maintain a suit in equity for injunction against threatened loss or damage to complainant by violation of the anti-trust laws does not extend to suit by a stockholder where the threatened loss or damage alleged is to the corporation and not to him directly.

2. Commerce ⊚⟲8(2)—Stockholder cannot maintain suit to enjoin consolidation of railroads doing interstate business (Clayton Act, § 16 [15 USCA § 26]; Transportation Act, § 407, pars. 2, 6 [49 USCA § 5]).

Clayton Act, § 16 (15 USCA § 26), does not authorize suit by stockholder to enjoin consolidation of railroads subject to Interstate Commerce Act (49 USCA § 1 et seq.; Comp. St. § 8563 et seq.); exclusive jurisdiction over the subject-matter being vested by the Transportation Act, § 407, pars. 2, 6 (49 USCA § 5; Comp. St. § 8567), in the Interstate Commerce Commission, which excludes jurisdiction of the courts, though suit is based on alleged violation of laws of the state.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the General Investment Company against the New York Central Railroad Company. Decree for defendant, and complainant appeals. Affirmed.

Frederick A. Henry, of Cleveland, Ohio (Snyder, Henry, Thomsen, Ford & Seagrave, of Cleveland, Ohio, on the brief), for appellant.

S. H. West, of Cleveland, Ohio, for appellee.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. Plaintiff, appellant, is a Maine corporation; defendant is a corporation organized under the railroad consolidation laws of New York, Ohio, Pennsylvania, Indiana, Michigan, and Illinois, pursuant to a consolidation agreement between the New York Central & Hudson River Railroad Company and the Lake Shore & Michigan Southern Railway Company. Plaintiff owned a small fraction of 1 per cent. of the stock of each of these component corporations; a part of it acquired after the consolidation had become imminent. A controlling interest in the capital stock of the Michigan Central Railroad was owned before the consolidation by the New York Central & Hudson River Railroad Company; in the Big Four and the Toledo & Ohio Central by the Lake Shore & Michigan Southern Railway Company, and in the Cincinnati Northern by the Big Four. Through the consolidation, this stock of the Michigan Central, Big Four, and Ohio Central, is owned, and that of the Cincinnati Northern is now controlled, by defendant.

On December 8, 1914, plaintiff filed a bill in an Ohio state court against the New York Central & Hudson River Railroad Company

and the Lake Shore & Michigan Southern Railway Company, to restrain the then pending consolidation of these two companies on the ground that, if completed, it would endanger plaintiff's interest as a stockholder in each of them substantially as set forth in the present bill. The consolidated company was nevertheless formed December 22, 1914; thereafter the suit was removed to the federal court. The bill was there dismissed on the ground that the New York Central & Hudson River Railroad Company had not been properly served with summons, and that the relief prayed for against all the defendants by virtue of the federal statutes regulating commerce was available to private persons, if at all, only under the Clayton Act, § 16 (38 Stat. 737 [15 USCA § 26]), which act it was held did not permit suit to be begun in a state court. Because the District Court, for the reasons stated, was without jurisdiction, the Supreme Court (General Investment Co. v. Lake Shore & M. S. R. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244), modified the decree of dismissal so as to specify that it was without prejudice as to all parts of the bill.

Nearly two years thereafter, the present bill was filed in the District Court on behalf of plaintiff and of all other stockholders of defendant similarly situated. It alleges the foregoing facts, and charges that defendant's domination of four parallel and potentially competing roads, through the above-recited stock ownership or control, is in violation of the federal acts to regulate commerce and the law of the states to whose jurisdiction the defendant is amenable; that thereby defendant is exposing itself to fines and forfeitures and thus wrongfully injuring itself and its stockholders, including plaintiff. The prayer is for a decree that defendant's acquisition and continued control over the four subsidiary railroads be enjoined as illegal and void, that defendant be enjoined from voting the stock of these railroads or permitting any community of directors, officers, land agents between it and the four, and that receivers for each of the four lines be appointed to proceed with a speedy sale of such stock to new and independent owners.

On motion, this bill was dismissed for want of jurisdiction over the subject-matter. On appeal, the decree was reversed and the cause remanded. 271 U. S. 228, 46 S. Ct. 496, 70 L. Ed. 920. " * * * The plaintiff attempts," said the Supreme Court, "to set forth a continuing violation of the Sherman Anti-Trust Act [15 USCA §§ 1–7, 15] and the Clayton Act [38 Stat. 730]. * * * Such a suit is essentially one arising under the laws of the United States, and, as the requisite [jurisdictional amount] is involved, is one of which the District Courts are given jurisdiction. By jurisdiction we mean power to entertain the suit, consider the merits and render a binding decision thereon; and by merits we mean the various elements which enter into or qualify the plaintiff's right to the relief sought. There may be jurisdiction and yet an absence of merits, * * * as where the plaintiff seeks preventive relief against a threatened violation of law of which he has no right to complain, either because it will not injure him or because the right to invoke such relief is lodged exclusively in an agency charged with the duty of representing the public in the matter."

Thereafter a motion to dismiss for want of equity was granted in the District Court. The opinion states substantially the same reasons given for the earlier dismissal, namely, that, as to the federal anti-trust statutes, Congress had not given private suitors a remedy in court in cases where, as here, the Interstate Commerce Commission had supervisory jurisdiction; and, as to the state anti-trust laws, so far as these laws authorized injunctions against interstate railroads, they were an improper interference with interstate commerce, since Congress had indicated an intent that there should not be injunction proceedings by private suitors in such cases. The case is before us on appeal from this decree of dismissal.

[1] Although a bill to enjoin assessment or collection of an allegedly illegal federal tax will not lie, a stockholder's bill to enjoin his corporation from paying such a tax has been held maintainable. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Brushaber v. Union Pacific R. R., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493. Therefore, argues plaintiff, while it has been settled that, before and but for the right granted by section 16 of the Clayton Act, a private suitor cannot sue to enjoin violations of the Sherman Anti-Trust Act (Paine Lumber Co. v. Neal, 244 U. S. 459, 37 S. Ct. 718, 61 L. Ed. 1256), nevertheless, in analogy to the tax cases, a stockholder could have maintained such a bill against his own corporation. We cannot assent to the argument. It overlooks an important distinction: The stockholder's suit in respect to alleged illegal taxes aims only to enjoin the voluntary payment by his corporation,

not the assessment or collection of the illegal tax itself, while the instant bill is an endeavor by a private suitor directly to enjoin the violation of the statute. Apart from section 16 of the Clayton Act, this bill therefore could not be maintained in so far as the alleged violation of the Federal Anti-Trust Acts are concerned. And, as to the effect of that section 16, we adhere to the views expressed in Continental Securities Co. v. Michigan Central R. R. (C. C. A.) 16 F. (2d) 378, that section 16 of the Clayton Act, permitting "any person" to bring suit to restrain a violation of the anti-trust laws, does not extend to a stockholder's suit, because in such a suit the plaintiff is not complaining of a "threatened loss or damage" which flows directly to him from the violation.

[2] A point not decided in the Continental Securities Case, because there, as here, the question already discussed was conclusive against the plaintiff's case, has been much pressed upon us in argument. It is this: Section 16 of the Clayton Act excepts from its permission of private suits, any "suit in equity for injunctive relief against any common carrier subject to the provisions of the act to regulate commerce, approved February 4, 1887, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." It is contended by the plaintiff, first, that the exception relates only to matters over which the Interstate Commerce Commission had jurisdiction at the time of the passage of the Clayton Act, which did not include control over railroad consolidations and stock acquisitions; and, second, that, even if other sections of the Clayton Act, taken together with the last part of section 16 give the Commission control of railroad combinations formed or stock acquisitions made with intent to suppress competition, still the Commission would have no power in the present case, both because its control does not extend to combinations whose illegality rests wholly on factors other than improper motive, and because, under recent decisions of the Supreme Court in cases involving the Federal Trade Commission, an administrative tribunal cannot give the relief here prayed for.

While the Commission's power upon application to authorize consolidation of two or more carriers by railroad or the acquisition by one of stock of another depends upon Transportation Act of 1920 (41 Stat. 481, § 407 [6] [2], being 49 USCA § 5; Comp. St. § 8567), we concur in the views expressed by Judge Westenhaver that the proviso of section 16 of the Clayton Act was not "limited in its operation to such matters pertaining to interstate commerce as were then subject to regulation, supervision, or other jurisdiction of the Interstate Commerce Commission. There is nothing in the language used which requires this construction. To so construe the language would be at variance with the obvious purpose of the law. It was undoubtedly the congressional intent to confer exclusive jurisdiction in these matters upon the Interstate Commerce Commission and not merely a partial jurisdiction limited to such matters only as had previously been brought within the jurisdiction of the Commission. If and whenever any subject-matter pertaining to interstate commerce is vested in the Interstate Commerce Commission, the proviso of section 16 applies to it."

Federal Trade Commission v. Eastman Kodak Co., 47 S. Ct. 688, 71 L. Ed. ——, United States Supreme Court May 31, 1927, and Federal Trade Commission v. Western Meat Co., 272 U. S. 554, 47 S. Ct. 175, 71 L. Ed. 405, are not in point. Only the latter was decided under sections 7 and 11 (15 US CA §§ 18, 21) of the Clayton Act. These cases involved the powers of the Federal Trade Commission; they are not decisive as to the application of the same statute to the power of the Interstate Commerce Commission, since the history, purpose, and procedure of the two bodies differ widely. Furthermore, defendant did not acquire the four subsidiary railroads here in question or their tangible property, but only a controlling stock interest therein; the bill asks for a sale of this stock, not a divestiture of the physical assets or a dissolution of the defendant consolidated railroad. The very cases cited are authority that such an order is within the competence of the administrative tribunal.

We are wholly unable to agree with the plaintiff's view that the questions hereinabove discussed have been concluded by the action of the Supreme Court upon the two occasions when this litigation was before it. As Judge Westenhaver says, referring to 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244: "It did not imply an opinion that this action could be maintained on the merits in a United States court by a private individual, but merely, as the later reversal states, that this court had the right in such an action to determine on the merits whether the plaintiff was entitled to the relief sought." See, too, Continental

Securities Co. v. Michigan Central R. R. (C. C. A.) 16 F.(2d) 378, 380.

As to relief against alleged violations of the anti-trust laws of the states in which the defendant is chartered and operates, we concur in the statement of Judge Westenhaver that Congress has "assumed jurisdiction of and legislated upon the subject-matter of the consolidation of railroad carriers doing an interstate business. Section 5, Interstate Commerce Act, as amended by section 407, Transportation Act, 1920 (U. S. Comp. Stat. 1923, § 8567); United States v. Southern Pacific R. R. Co. [D. C.] 290 F. 443. This being so, upon the allegations of plaintiff's bill, the alleged combination in restraint of intrastate commerce is so inextricably interwoven with the restraint of interstate commerce that it is impossible to render a judgment with respect thereto without at the same time adjudging as to the combination in restraint of interstate commerce. So to do would be indirectly permitting a private party to do that which it is forbidden to do directly. Hence it follows that the rights of the plaintiff, if any, so far as the same rest upon alleged combination in violation of state or local laws, are dominated by the federal law. That Congress has so intended, so far as railroad carriers engaged in interstate trade are concerned, no matter by what state they may have been chartered, is obvious, and it seems to me no doubt can be entertained as to the constitutional power of Congress so to legislate."

Decree affirmed.