## WESTERN MEAT CO. v. FEDERAL TRADE COMMISSION.

Circuit Court of Appeals, Ninth Circuit.
June 24, 1929.

No. 4064.

F. L. Horton, of Chicago, Ill., Sullivan & Sullivan & Theo. J. Roche and Edward I. Barry, all of San Francisco, Cal., and John D. Hoyt, of Reno, Nev., for petitioner.

Robert E. Healy and Alfred M. Craven, both of Washington, D. C., for respondent.

Before GILBERT, RUDKIN, and DIET-RICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts). ■ The case comes on to be heard upon the return made by the petitioner, in which it prays that its final report be approved by the court. The Federal Trade Commission, in objecting to the final report, has failed to point out definitely the particulars of the petitioner's default or to specify distinctly what was left undone that ought to have been done or what was done that ought not to have been done. Its position seems to be that, inasmuch as the preservation of established competition was the great end which the Legislature sought to secure by the Clayton Act (38 Stat. 730), an act which was intended to supplement the purpose and effect of the Sherman Act (15 USCA §§ 1–7, 15), Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 355, 42 S. Ct. 360, 66 L. Ed. 653, the order of the Commission prohibits any divestment of the stock of the Nevada Company which would enable the petitioner to retain any benefit or any outcome, result, or effect of the acquisition thereof, that the divestment must carry with it the plant and physical assets of the Nevada Company as a going concern and be effectual to render possible the restoration of the competition that had been wrongly suppressed; in short, that the divestment of the stock must include a divestment of the plant and property necessary to a going concern so as to restore the competition that was interrupted by the unlawful acquisition of the stock. That position is, we think, wholly unsustainable. In purchasing the stock of the Nevada Company, the petitioner paid presumably the full market value thereof. It owed nothing therefore to the former owners of that stock, and it was not the purpose of the order of the Commission that it restore to the Nevada Company or to its stockholders anything which it acquired by the purchase. The order of the Commission requiring the petitioner to divest itself of the stock is not susceptible of the construction which is suggested, and unquestionably such an order would have been beyond the powers of the Commission. Counsel for the Commission makes no question of the

good faith of the petitioner's effort to divest itself of the stock or of the good faith of the indebtedness for which it obtained its judgment and on which it caused the properties of the Nevada Company to be sold. It does say, however, that, inasmuch as the petitioner still held the stock of the Nevada Company, it had no right to proceed as it did by its action at law for the collection of that company's debt to it. A similar contention was made in Aluminum Co. of America v. Federal Trade Commission (C. C. A.) 299 F. 361, where it was urged that the debt on which the Aluminum Company sued was fraudulent and that therefore it should be restrained from collecting the same. But the court found that the indebtedness was not fraudulent, and, not being fraudulent, the court was powerless to restrain the judgment creditor from proceeding in any manner provided by law for the collection of its debt. Said the court: "Does the Clayton Act, in a case like this, thus nullify other laws and deprive such a creditor of the right to resort to them? We have found nothing in its terms which indicates that it does."

■ Counsel for the Commission fails to point out the further steps that should have been taken by the petitioner to re-establish the Nevada Company as a going concern. Obviously that result could only have been accomplished by inducing others to invest in the stock of the company. All efforts to sell the stock and plant with a view to re-establishing the industry failed, and it is inferable that the failure resulted from the petitioner's inability to show that the venture would be successful. We cannot see that it could have done more than it did. It tried in good faith for a period of nearly two years to sell the stock and the plant and the property which it had acquired from the Nevada Company, and what it did thereafter we think it had the lawful right to do.

The decision of the Supreme Court in Federal Trade Commission v. Western Meat Co. must be read in the light of the other decisions of the court rendered at the same time and disposed of in the same opinion. Thus in Thatcher Manufacturing Co. v. Federal Trade Commission, 272 U. S. 554, 47 L. Ed. 175, 71 L. Ed. 405, the court said: "When the Commission institutes a proceeding based upon the holding of stock contrary to Section 7 of the Clayton Act [15 USCA § 18] its power is limited by Section 11 [section 21] to an order requiring the guilty person to cease and desist from such violation, effectually to divest itself of the stock, and to make no further use of it. The Act has no

application to ownership of a competitor's property and business obtained prior to any action by the Commission, even though this was brought about through stock unlawfully held. The purpose of the Act was to prevent continued holding of stock and the peculiar evils incident thereto." The court went on to say that, if the purchase of property has produced an unlawful status, a remedy is provided through the courts, but that the Commission is without authority under such circumstances. Here the debt of the Nevada Company to the petitioner was incurred in good faith prior to any action of the Federal Trade Commission. No valid reason is advanced for holding that the petitioner was powerless to subject the debtor's property to the payment of the debt. Had the petitioner succeeded in its efforts to sell the stock of the Nevada Company to a purchaser or purchasers who would acquire the same and assume the indebtedness of that company to the petitioner, no question could be made of the right of the petitioner to enforce the satisfaction of its claim by an action at law.

The Commission cites cases which arose under the Sherman Act, such as Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; United States v. American Tobacco Co., 221 U. S. 106, 31 S. Ct. 632, 55 L. Ed. 663; Continental Insurance Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871; and others, to the effect that public interests are paramount to private interests, and that, if for reasons of public policy the Legislature declares that a railway shall not become the purchaser of a competing line, the purchase is none the less unlawful because the parties choose to have it take the form of a judicial sale, and it is argued that, while there was no direct prohibition in the decree forbidding the petitioner to acquire the physical assets of the Nevada Packing Company, it is still true that the decree specifically provided such a divestiture of the stock and has precluded the petitioner from acquiring and retaining in any manner any of the physical assets. But the Clayton Act, as we have seen, contains no such broad grant of power as does the Sherman Act, and the punishment can be only that which the statute prescribes. Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 520. The harmful result of the purchase of the stock by the petitioner was the suppression of competition and the injury to the public. But it did not call for restitution

or reparation to any injured person. A decree ordering that a divestment of stock so unlawfully acquired be made in such a way as to restore competition would be incapable of enforcement. The most that could be done was that which was done here, to require the divestment of the stock and the property and to deny the offender the right to obtain or keep any advantage which might be the result, directly or indirectly, of its unlawful act. We find no ground for sustaining the Commission's contention that the petitioner has failed to comply with the order of the Commission and the decree of this court.

The objections to the final report are overruled and the report is approved.