**UNITED STATES v. CELANESE COR-
PORATION OF AMERICA.**

United States District Court
S. D. New York.
June 22, 1950.

Herbert A. Bergson, Assistant Attorney General, Melville C. Williams, John Drennen Hill, Malcolm A. Hoffman, Special Assistants to the Attorney General, Beatrice Rosenberg, Louis Perlmutter, Trial Attorneys, Washington, D. C., for plaintiff.

Shearman & Sterling & Wright; Rosenman, Goldmark, Colin & Kaye, New York City, Samuel I. Rosenman, Charles C. Parlin, Paul R. Russell, Seymour D. Lewis, all of New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

The defendant has moved to dismiss the claim in the complaint under Section 7 of the Clayton Act, 15 U.S.C.A. § 18, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for failure to state a claim upon which relief can be

granted, or in the alternative, to grant partial summary judgment dismissing the claim under Section 7 of the Clayton Act pursuant to Rule 56(b).

The complaint alleges that Celanese Corporation of America (hereafter Celanese) acquired the stock and assets of Tubize Rayon Corporation (hereafter Tubize) pursuant to a merger consummated on February 8, 1946 in violation of both Section 1 of the Sherman Act, 15 U.S.C.A. § 1, and Section 7 of the Clayton Act, 15 U.S.C.A. § 18. Defendant's motion is addressed solely to the Government's charge that the merger constitutes a violation of Section 7 of the Clayton Act.

Section 7 provides in part that: "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce."

It appears unquestioned that the merger itself between Celanese and Tubize, both Delaware corporations, was in conformance with the requirements of the Delaware Corporation Law. The theory advanced by the Government on this application is that the merger necessarily involved an acquisition of stock directly or indirectly; that the interest represented by shares of stock in the merging corporation (Tubize) passed to the surviving corporation (Celanese); and that the merger represents more than a mere acquisition of assets, which admittedly does not violate Section 7, since the surviving corporation obtains control over the merging corporation's profits and property which its former stock represented.

True, a merger is more than a mere acquisition of assets, for the stockholders of the merging corporation are granted proprietary rights in the management, property and assets of the surviving corporation. Yet it is difficult for this Court to comprehend how the surviving corporation can be said to be acquiring the stock of the merging corporation, or with regard to the surviving corporation, how the merger can be said to differ materially from an outright purchase of the assets, name and goodwill of a competitor. With an outright purchase of assets would go the control over the "profits and property" that the Government seems to tie to ownership of the stock itself. Hence under the Government's theory a merger, reorganization, consolidation or simply a direct purchase of assets in which two corporations are involved would constitute an acquisition of "equitable ownership" or "stock" in violation of Section 7. This is inconsistent with the position taken by the Government that an acquisition of assets is not forbidden by Section 7.

The Court, however, cannot say that the Government's theory is wholly devoid of merit. If this were the first case construing the meaning and coverage of Section 7, that theory would require serious attention. Though the questions raised upon this application were not heretofore presented in the same fashion, it is believed that these questions were answered by the Supreme Court in the case of Arrow-Hart & Hegeman Electric Co. v. Federal Trade Commission, 1934, 291 U.S. 587, 54 S.Ct. 532, 78 L.Ed. 1007.

The question presented essentially is not whether a merger involves a direct or indirect acquisition of stock, but whether Section 7 forbids a lawful merger, even assuming that an acquisition of stock can be spelled out as an incident to the process of merging.

In the Arrow-Hart case, after the Federal Trade Commission had commenced a proceeding under Section 11 of the Clayton Act, 15 U.S.C.A. § 21, to compel a holding company to divest itself of the voting stock of two competing operating companies allegedly obtained in violation of Section 7, a rather complicated merger was accomplished which united all the property of the operating companies in a new corporation, and all corporations, including the holding company, were dissolved. The Supreme Court held that the merger, even if intended to evade Section 7, divested the Federal

Trade Commission of jurisdiction to order divestiture of stock or assets. The Court split 5-4 in the decision. The majority of the Court held that even if the transfer of stock to the holding company was a violation of Section 7, that the subsequent merger in effect "cured" the illegality and that the Commission could not thereafter order divestiture. The rationale of this holding is that the majority believed that the stockholders of the operating companies could have accomplished in one legal step (i. e., by merger not in violation of Section 7), what it did accomplish in two steps, one illegal (the transfer of the stock to the holding company) and the other legal (the merger). The Court said: "The statute (Section 7) does not forbid the acquirement of property, or the *merger of corporations* pursuant to state laws, nor does it provide any machinery for compelling a divestiture of assets acquired by purchase or otherwise, or the distribution of physical property brought into a single ownership by merger. "If, instead of resorting to the holding company device, the shareholders of Arrow and Hart & Hegeman (the operating companies) had *caused a merger, this action would not have been a violation of the act."* (Emphasis added.) 291 U.S. at page 595, 54 S.Ct. at page 536, 78 L.Ed. 1007.

The Government claims that this language is mere dictum and that in any event it does not apply to the Justice Department bringing this suit, but only to the Federal Trade Commission. The Court's statement that a merger does not violate Section 7 cannot be mere dictum, for the Court's decision is based on this belief. If the merger in the case could have been considered a violation of Section 7, the Court would not have held that two successive illegal acts divested the Commission of jurisdiction or power to act. It was their belief that the accomplished merger was ultimately proper under Section 7 that led to their decision.

The dissent by Mr. Justice Stone, in which The Chief Justice, Mr. Justice Brandeis and Mr. Justice Cardozo concurred, stated that an acquisition of stock in violation of Section 7 which accelerates and facilitates a merger should not be held to oust the Federal Trade Commission of jurisdiction. The dissenting Justices did not differ essentially from the view of the majority. They believed that the merger was the product of the unlawful transfer of stock to the holding company, and that the merger could not have been as easily effectuated had the stock been returned to those from whom it had originally been acquired. 291 U.S. at page 604, 54 S.Ct. at page 539, 78 L.Ed. 1007. The majority thought that the merger could have been effected directly with the same effort and therefore that the prior illegal transfer was in effect a nullity. 291 U.S. at pages 597–598, 54 S.Ct. at pages 536, 537, 78 L.Ed. 1007.

The minority of the Court did agree with the majority that a corporate merger is not a violation of Section 7. Mr. Justice Stone said: "It is true that *the Clayton Act does not forbid corporate mergers,* but it does forbid the acquisition by one corporation of the stock of competing corporations so as substantially to lessen competition. It follows that mergers effected, as they commonly are, through such acquisition of stock, necessarily involve violations of the act, as this one did. Only in rare instances would there be hope of a successful merger of independently owned corporations by securing the consent of their stockholders in advance of the acquisition of a working stock control of them." (Emphasis added.) 291 U.S. at pages 600–601, 54 S.Ct. at pages 538, 78 L.Ed. 1007.

■ Thus it can be seen that the nine Justices *unanimously* agreed that corporate mergers do not violate Section 7. This Court must follow the clear mandate of the Arrow-Hart decision. Though the Supreme Court in that case was preoccupied mainly with the question of the jurisdiction of the Federal Trade Commission, it necessarily had to construe Section 7 in the course of its decision, as heretofore shown, and the Justice Department as well as the Commission is bound by that construction. This decision, handed down in 1934, is the only authoritative holding on the application of Section 7 to corporate mergers.

The Government contends that mergers were not as serious a problem in the anti-

trust field either at the time Section 7 was enacted in 1914 or at the time of the Arrow-Hart decision, as they are today, and that therefore the Supreme Court holding should be re-evaluated in the light of present conditions.

■ As can be seen from the Arrow-Hart decision itself, merger was a device being employed to avoid Section 7 in 1933. An examination of the legislative history of Section 7 shows that the Chairman of the House Committee on the bill recognized that the next step in the process of lessening competition after the holding company was the corporate merger, and yet he stated that the Clayton Act prohibits only holding companies that lessen competition. 51 Cong. Rec. 9073 (1914). Without discussing the history of Section 7 at any great length, it should be noted that the Section was designed primarily to deal with the evil of the secret acquisition by one corporation of the stock of another corporation, principally those acquisitions by "holding companies". Congress intended that the public should not be deceived into believing that companies were competing when their stock was actually commonly owned either by one of the "competing" corporations or by a third corporation; Section 7 was not intended to apply to the acquisition by one corporation of the assets of another or the open uniting of the property of two or more corporations by legitimate reorganization, consolidation or merger. See Report on H.R. 15657, 63d Cong. 2d Sess., Report No. 627 (May 6, 1914); 51 Cong.Rec. 9073-74 (Webb), 9270–71 (Carlin), 9554 (Barkley), 14226 (Reed), 14316 (Cummins), 14456–57 (Colt), 14457 (Reed), 14165–66 (Poindexter). (Note: Section 7 was numbered and referred to as Section 8 in the reports and debates.) Attempts were made to extend the scope of Section 7, but they failed. See 51 Cong.Rec. 14315, 15863; Senate Document No. 585, 63d Cong., 2d Sess. (September 24, 1914); House Report No. 1168, 63d Cong., 2d Sess. (September 25, 1914). The Attorney General's office and the Federal Trade Commission have long conceded that Section 7 does not apply to an acquisition of assets. 33 Op.Att. Gen. 225, 241; 1 F.T.C.Decisions 541–2. After the Arrow-Hart case, aside from one reported instance in which no direct decision on the question was rendered, United States v. Republic Steel Corporation, D.C.N.D.Ohio 1935, 11 F.Supp. 117, the Justice Department had seemingly given up its contention that a merger violates Section 7. The Attorney General now claims in this case, after fifteen years of silence, that a merger is more than an acquisition of assets and in effect seeks a review of the doctrine established by the Arrow-Hart case.

■ Strenuous efforts are being made by the Government to obtain an amendment to Section 7 so that it will apply to an acquisition of assets and thus close the corporate merger loophole. See, e. g. H.R. 2734, 81st Cong., 1st Sess. (1949). This Court cannot amend Section 7 by judicial legislation, nor overrule the direct holding on the subject by the Supreme Court. The instrumentality to combat this evil which the Government says is a threat to a well-balanced, free, competitive economy, must come from Congress.

If the merger of Celanese and Tubize was in any respect a violation of the anti-trust laws, the Government still has its remedy under the Sherman Act. See Federal Trade Commission v. Western Meat Co., 1926, 272 U.S. 554, 561, 47 S.Ct. 175, 71 L.Ed. 405; Arrow-Hart case, supra, 291 U.S. at page 599, 54 S.Ct. at page 537, 78 L.Ed. 1007.

■ Defendant has moved to dismiss the complaint in part or for partial summary judgment. The complaint on its face alleges that Celanese acquired the stock and assets of Tubize as a result of the merger. There is no allegation of any sort to the effect that there was an unlawful acquisition of stock other than that allegedly involved in the merger. It would appear therefore that the complaint on its face is insufficient to state a claim under Section 7. However, the Court has considered also the unrefuted statement in the affidavit submitted in support of defendant's motion to the effect that there was no acquisition of stock prior to the merger. Since this statement is matter outside the pleading and has been considered by the Court, summary

judgment is the proper remedy. See Rule 12(b).

Defendant's motion for partial summary judgment dismissing the claim insofar as it relates to Section 7 of the Clayton Act is granted.

Settle order in accordance with this decision.