# D. R. WILDER MANUFACTURING COMPANY v. CORN PRODUCTS REFINING COMPANY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 71.   Argued November 9, 1914.—Decided February 23, 1915.

Where the pleading of the plaintiff in error demurred to justified the inference that the transaction alleged to be in violation of the Anti-Trust Act was interstate, the court may assume that such was the case, and, if the decision turns on the construction of the act, a Federal question is involved.

The general rule is that one who has dealt with a corporation as an existing concern having capacity to sell, cannot assert, or escape liability, on the ground that such concern has no legal existence because it is an unlawful combination in violation of the Anti-Trust Act.   Such a defense is a mere collateral attack on the organization of the corporation which cannot lawfully be made.   *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

Courts may not refuse to enforce an otherwise legal contract because it might afford some indirect benefit to a wrongdoer.

The contract in this case *held* not to be intrinsically illegal because the seller agreed to give a portion of its profits to the purchaser of goods provided such purchaser dealt exclusively with the seller for a specified period and also bought the goods exclusively for purchaser's own use; and also *held* that such contract was not illegal under the Anti-Trust Act.   *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227, distinguished.

The Anti-Trust Act is founded on broad conceptions of public policy and its prohibitions were enacted not only to prevent injury to the individual but harm to the general public, and its prohibitions and the remedies it provides are co-extensive with such conceptions.

Where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or remedy given can be only that which the statute prescribes.

The power given by the Anti-Trust Act to the Attorney General to dissolve a corporation or combination as violative of that act is inconsistent with the right of an individual to assert as a defense to a

contract on which he is otherwise legally liable that the other party has no legal existence in contemplation of that act.

In *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227, the contract involved was not held illegal because a party thereto was an illegal combination under the Anti-Trust Act, but upon elements of illegality inhering in the contract itself. In this case, *held* that a party cannot assert as a defense to a suit for money otherwise due under a contract, not inherently illegal, the fact that the party otherwise admittedly entitled to recover is an illegal combination under the Anti-Trust Act.

11 Ga. App. 588, affirmed.

THE facts, which involve the construction of the Federal Anti-Trust Act, and the effect of a profit sharing contract of a corporation and those dealing with it exclusively and the right of the corporation to recover for goods sold, are stated in the opinion.

*Mr. Marion Smith* for plaintiff in error:

The answer shows defendant in error to be a combination in restraint of interstate trade in violation of the Federal statute; the combination merged into one corporation various firms and corporations which previously had been competitors, for the purpose, and with the effect, of restraining and monopolizing such interstate trade. The creation of a monopoly is sufficient to make the restraint unreasonable. *Am. Tobacco Co.* v. *United States*, 221 U. S. 106; *Standard Oil Co.* v. *United States*, 221 U. S. 1.

The corporate organization of the defendant in error cannot be used as a cloak to cover the fact that it constitutes an illegal combination. *Northern Securities Co.* v. *United States*, 193 U. S. 197; *Am. Tobacco Co.* v. *United States*, and *Standard Oil Co.* v. *United States*, *supra*.

A recovery cannot be had upon an account for goods sold and delivered by such illegal combination when the goods were sold with direct reference to and in execution of agreements which had for their object and which had directly as their effect the accomplishment of the illegal

ends for which the combination was organized. *Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227.

It is not necessary to show that the contracts under which the goods were sold are expressly violative of the Federal statute. The illegal intent with which the contracts were made is sufficient to make illegal contracts which appear on their face as no more than ordinary acts of competition. *Nash* v. *United States*, 229 U. S. 373; *Swift* v. *United States*, 196 U. S. 375; *Loewe* v. *Lawlor*, 208 U. S. 274.

A contract of purchase by an illegal combination which together with other similar contracts tends to create a monopoly is void and unenforceable even though the other party to the contract is ignorant of its purpose in this respect. *Brent* v. *Gay*, 149 Kentucky, 615.

A contract, which though apparently harmless in itself, is in reality a part of a general scheme to violate statutes against the restraint of trade, will be held to be illegal. *Continental Wall Paper Co.* v. *Voight, supra; Cravens* v. *Carter*, 92 Fed. Rep. 479; *Pacific Factor Co.* v. *Adler*, 90 California, 110; *Fink* v. *Schneider Granite Co.*, 187 Missouri, 244; *Detroit Salt Co.* v. *National Salt Co.*, 134 Michigan, 120.

A contract is illegal where, though harmless on its face, it is one of many similar contracts which collectively have the direct effect of aiding an illegal purpose of restraining interstate trade. *United Shoe Machinery Co.* v. *LaChapelle*, 212 Massachusetts, 467.

The scheme must be treated as an entirety. *Addyston Pipe Co.* v. *United States*, 175 U. S. 211; *Swift* v. *United States*, 196 U. S. 375; *Montague* v. *Lowry*, 193 U. S. 38; *Loewe* v. *Lawlor*, 208 U. S. 274.

Illegality may consist in the purpose to accomplish an illegal result though the methods used are not inherently unlawful. *Hanauer* v. *Doane*, 12 Wall. 342; *Kohn* v. *Melcher*, 43 Fed. Rep. 641; *Mogul Steamship Co.* v. *Mc-*

*Gregor*, L. R. 61; Q. B. Div. 285; [1892] A. C. 25; Clark on Contracts, 478 *et seq*.

Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. *Hall* v. *Coppell*, 7 Wall. 542; *Armstrong* v. *Toler*, 11 Wheat. 258; *Embrey* v. *Jemison*, 131 U. S. 336.

One of the parties cannot maintain an action on the valid part of the contract discarding or omitting to prove the portion that is illegal. *McMullin* v. *Hoffman*, 174 U. S. 639.

Under the *Continental Wall Paper Co. Case* when the sales are made under and with reference to an illegal agreement, and the plaintiff sues on the sales, the defendant may thereupon plead the illegal agreement of which the sales are a part. See also: *Oscanyan* v. *Winchester Arms Co.*, 103 U. S. 261.

The cases relied upon by the defendant in error can be distinguished from the case at bar. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, which is especially stressed by the defendant in error, decided only that an illegal combination was not by reason alone of its illegal character prevented from collecting for goods sold.

If any of the cases urged by the defendant in error go to the extent of holding that this is not sufficient to make the agreement illegal, they are in conflict with the decisions of this court. *Nash* v. *United States*, 229 U. S. 373; *Swift* v. *United States*, 196 U. S. 375; *Loewe* v. *Lawlor*, 208 U. S. 274. *Bank* v. *Glass*, 169 Mo. App. 374, is not in point, nor is *Bessire* v. *Corn Products Co.*, 47 Ind. App. 313.

There is nothing to distinguish this case from the *Continental Wall Paper Co. Case*, and the decision then rendered is controlling.

*Mr. James W. Austin* and *Mr. Preston Davie*, with whom *Mr. Morgan J. O'Brien*, *Mr. Albert B. Boardman*

and *Mr. Young B. Smith* were on the brief, for defendant in error.

Mr. Chief Justice White delivered the opinion of the court.

We refer to the parties, the one as the Manufacturing, and the other as the Refining Company. Sued by the Refining Company in April, 1909, to recover the amount of the price of two lots of glucose or corn syrup which it had bought in January, 1909, and which it had consumed and not paid for, the Manufacturing Company asserted its non-liability on the following grounds which we summarize:

(a) Because the Refining Company had no legal existence as it was a combination composed of all the manufacturers of glucose or corn syrup in the United States, illegally organized with the object of monopolizing all dealings in such products in violation of the Anti-Trust Act of Congress. That having illegally brought into one organization all the manufacturers of glucose or corn syrup, the corporation had unreasonably advanced the price of the products of its manufacture to the injury of the public. (b) That this end being accomplished, the corporation sought to perpetuate its monopoly by rendering it difficult or impossible for competitors to go into the business of producing glucose or corn syrup by devising a so-called profit-sharing scheme, by which it was proposed to give to all those who purchased from the combination a stipulated percentage upon the amount of the purchases made in one year to be paid at the end of the following year provided that during such time they dealt with no one else but the combination. While the sum of the percentage thus offered, it was alleged, varied from year to year, nevertheless it was charged that in substance the contract or offer remained the same. The tender to

the Manufacturing Company of a right to participate in the scheme, it was alleged, was first made in 1907 relative to the business done in 1906 in the form of a letter which is in the margin [1] and this offer or asserted contract was continued from year to year. It was further alleged that the scheme proved successful in accomplishing its wrongful purpose since, although subsequently independent concerns engaged in the business of manufacturing glucose or corn syrup and offered to sell their products at prices less than those charged by the combination, such concerns were virtually driven out of business because those who desired to purchase the products were deterred from buying from them for fear of losing the percentage which they would receive from the combination if all their purchases

---

[1] "26 Broadway, New York, March 9, 1907.
"The D. R. Wilder Mfg. Co., Atlanta, Ga.

"Gentlemen: This company recognizing the fact that its own prosperity, in a great measure, is interwoven with the good will and cooperation of its patrons, has decided to adopt a liberal plan of profit-sharing with you, in case you shall in the future continue to give us your exclusive patronage.

"This company inaugurates such a policy of profit-sharing by announcing that it will set aside out of its profits from the manufacture and sale of glucose and grape sugar for the last six months of 1906, an amount equal to ten cents per hundred pounds on all shipments of glucose and grape sugar (Warner's Anhydre and Bread Sugar excepted) which shall have been made to you by this company from July 1st to December 31, 1906.

"This amount will be paid to you or your successors on December 30, 1907, on condition that for the remainder of the year 1906 and the entire year 1907, you or your successors shall have purchased exclusively from this company or its successors all the glucose and grape sugar required for use in your establishment.

"With the assurance of steadfast coöperation of its customers, given in reciprocation for the benefits conferred upon them, this company confidently anticipates a continuance of such profit-sharing distribution annually to the full extent that its earnings may warrant.

"Yours very truly,
"CORN PRODUCTS REFINING COMPANY."

continued to be made from it alone, and moreover because of the dread felt by purchasers that the independents would not be able to resist the overweening and controlling power of the combination. It was moreover alleged that all purchases made by the manufacturing company "contained the following clause in the contract of purchase: 'The goods herein sold are for your own consumption and not for resale.'"

Charging that the condition which made the payment of the proposed profit-sharing percentage depend upon dealing alone with the combination was void and should be disregarded, the answer asked not only that the prayer for judgment for the purchase price be rejected but that treating the failure of the Manufacturing Company to comply with the condition on which the offer of profit sharing was made as immaterial, there should be a judgment for that company for the percentage of profits on the business for the year 1908.

On motion the answer was stricken out as stating no defense. There was a judgment in the absence of further pleading against the Manufacturing Company for the price of the goods, as sued for, and rejecting its claim for the percentage of profits. This judgment was affirmed by the court below (11 Ga. App. 588) and because of an assumed failure to give effect to the Anti-Trust Act of Congress this writ of error was prosecuted.

As the context of the answer clearly justified the inference that the sale of the glucose was an interstate transaction, the court below was right in assuming that to be the case and therefore we put out of view as devoid of merit the contrary suggestion made by the Refining Company.

Having dealt with the Refining Company as an existing concern possessing the capacity to sell, speaking generally the assertion that it had no legal existence because it was an unlawful combination in violation of the Anti-Trust

Act was irrelevant to the question of the liability of the Manufacturing Company to pay for the goods since such defense was a mere collateral attack on the organization of the corporation which could not be lawfully made.[1]  Besides, considered from the point of view of the alleged illegality of the corporation, the attack on its existence was absolutely immaterial because the right to enforce the sale did not involve the question of combination, since conceding the illegal existence of the corporation making the sale, the obligation to pay the price was indubitable, and the duty to enforce it not disputable.  This is true because the sale and the obligations which arose from it depended upon a distinct contract with reciprocal considerations moving between the parties,—the receipt of the goods on the one hand and the payment of the price on the other.  And this is but a form of stating the elementary proposition that courts may not refuse to enforce an otherwise legal contract because of some indirect benefit to a wrongdoer which would be afforded from doing so or some remote aid to the accomplishment of a wrong which might possibly result—doctrines of such universal acceptance that no citation of authority is needed to demonstrate their existence, especially in view of the express ruling in *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, applying them to the identical general question here involved.

The case therefore reduces itself to the question whether the contract of sale was inherently illegal so as to bring it within the also elementary rule that courts will not exert their powers to enforce illegal contracts or to compel wrong-doing.  The only suggestion as to the intrinsic illegality of the sale results from the averments of the

---

[1] *Finch* v. *Ullman*, 105 Missouri, 255; *Taylor* v. *Portsmouth, &c. St. Ry.*, 91 Maine, 193; *Smith* v. *Mayfield*, 163 Illinois, 447; *Detroit City Ry.* v. *Mills*, 85 Michigan, 634; *Mackall* v. *Chesapeake &c. Canal Co.*, 94 U. S. 308; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

answer as to the offer of a percentage of profits upon the condition of dealing exclusively with the Refining Company for the following year and the clause to the effect that the goods were bought by the Manufacturing Company for its own use and not for resale.   But we can see no ground whatever for holding that the contract of sale was illegal because of these conditions.   In fact it is not so contended in argument since substantially the proposition which is relied upon is that although such stipulations were intrinsically legal, they become illegal as the result of the duty to consider them from the point of view that one of the parties was an illegal combination interested in inserting such conditions as an efficient means of sustaining its continued wrong-doing and therefore giving power to accomplish the baneful and prohibited results of its illegal organization,—a duty which, it is urged, results from reason, is commanded by the Anti-Trust Act and the obligation to enforce its provisions and is required because of a previous decision of this court enforcing that act (*Continental Wall Paper Co.* v. *Voight*, 212 U. S. 227) unless that decision is to be now qualified or overruled.

In the first place, the contention cannot be sustained consistently with reason.   It overthrows the general law. It admits the want of power to assail the existence of a corporate combination as a means of avoiding the duty to pay for goods bought from it and concedes at the same time the legality of the condition in the sale and yet proposes by bringing the two together to produce a new and strange result unsupported in any degree by the elements which are brought together to produce it and conflicting with both.

In the second place, the proposition is repugnant to the Anti-Trust Act.   Beyond question reëxpressing what was ancient or existing and embodying that which it was deemed wise to newly enact, the Anti-Trust Act was intended in the most comprehensive way to provide

against combinations or conspiracies in restraint of trade or commerce, the monopolization of trade or commerce or attempts to monopolize the same. *Standard Oil Co.* v. *United States,* 221 U. S. 1; *United States* v. *American Tobacco Co.,* 221 U. S. 106. In other words, founded upon broad conceptions of public policy, the prohibitions of the statute were enacted to prevent not the mere injury to an individual which would arise from the doing of the prohibited acts, but the harm to the general public which would be occasioned by the evils which it was contemplated would be prevented, and hence not only the prohibitions of the statute but the remedies which it provided were co-extensive with such conceptions. Thus the statute expressly cast upon the Attorney-General of the United States the responsibility of enforcing its provisions, making it the duty of the district attorneys of the United States in their respective districts under his authority and direction to act concerning any violations of the law. And in addition, evidently contemplating that the official unity of initiative which was thus created to give effect to the statute required a like unity of judicial authority, the statute in express terms vested the Circuit Court of the United States with "jurisdiction to prevent and restrain violations of this act," and besides expressly conferred the amplest discretion in such courts to join such parties as might be deemed necessary and to exert such remedies as would fully accomplish the purposes intended. Act of July 2, 1890, c. 647, 26 Stat. 209.

It is true that there are no words of express exclusion of the right of individuals to act in the enforcement of the statute or of courts generally to entertain complaints on that subject. But it is evident that such exclusion must be implied for a two-fold reason: First, because of the familiar doctrine that "where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy

can be only that which the statute prescribes." *Farmers'
& Mechanics' National Bank* v. *Dearing*, 91 U. S. 29, 35;
*Barnet* v. *National Bank*, 98 U. S. 555; *Oates* v. *National
Bank*, 100 U. S. 239; *Stephens* v. *Monongahela Bank*, 111
U. S. 197; *Tenn. Coal Co.* v. *George*, 233 U. S. 354, 359;
Second, because of the destruction of the powers conferred
by the statute and the frustration of the remedies which
it creates which would obviously result from admitting
the right of an individual as a means of defense to a suit
brought against him on his individual and otherwise
inherently legal contract to assert that the corporation
or combination suing, had no legal existence in contempla-
tion of the Anti-Trust Act.   This is apparent since the
power given by the statute to the Attorney-General is
inconsistent with the existence of the right of an individ-
ual to independently act since the purpose of the statute
was where a combination or organization was found to
be illegally existing to put an end to such illegal existence
for all purposes and thus protect the whole public,—an
object incompatible with the thought that such a cor-
poration should be treated as legally existing for the
purpose of parting with its property by means of a con-
tract of sale and yet be held to be civilly dead for the pur-
pose of recovering the price of such sale and then by a
failure to provide against its future exertion of power be
recognized as virtually resurrected and in possession of au-
thority to violate the law.   And in a two-fold sense these
considerations so clearly demonstrate the conflict between
the statute and the right now asserted under it as to render
it unnecessary to pursue that subject further.   In the first
place because they show in addition how completely the
right claimed would defeat the jurisdiction conferred by
the statute on the courts of the United States,—a juris-
diction evidently given, as we have seen, for the purpose
of making the relief to be afforded by a finding of illegal
existence as broad as would be the necessities resulting

from such finding. In the second place because the possibility of the wrong to be brought about by allowing the property to be obtained under a contract of sale without enforcing the duty to pay for it, not upon the ground of the illegality of the contract of sale but of the illegal organization of the seller, additionally points to the causes which may have operated to confine the right to question the legal existence of a corporation or combination to public authority sanctioned by the sense of public responsibility and not to leave it to individual action prompted it may be by purely selfish motives.

As from these considerations it results not only that there is no support afforded to the proposition that the Anti-Trust Act authorizes the direct or indirect suggestion of the illegal existence of a corporation as a means of defense to a suit brought by such corporation on an otherwise inherently legal and enforceable contract, but on the contrary that the provisions of the act add cogency to the principles of general law on the subject and therefore make more imperative the duty not directly or indirectly to permit such a defense to a suit to enforce such a contract, we put that subject out of view and come to the only remaining inquiry, the alleged effect of the previous ruling in the *Continental Wall Paper Case, supra.*

It is to be observed in considering that contention that the general rule of law which we have stated is not apparently questioned in the argument and the controlling influence of the ruling in the *Connolly Case, supra,* if here applicable is not denied, but the contention is that the general law is not applicable and the *Connolly Case* is inapposite because of an exception which was engrafted upon the general law by the ruling in the *Continental Wall Paper Case* under which it is said this case comes. While it clearly appears that this is the contention, it is difficult to precisely fix the ground upon which it is rested. But as the rule of general law which under ordinary cir-

cumstances does not permit the existence of a corporation to be indirectly attacked is not assailed, and as it is not asserted that irrespective of the illegal organization of the corporation, the contract of sale was inherently unlawful, it follows that the proposition is the one which we have already in another aspect disposed of, that is, that the sale and its conditions although inherently legal become illegal by considering the illegal corporation and the aid to be afforded to its wrongful purposes by the conditions which formed a part of the sale. But in substance this only assumes that it was held in the *Continental Wall Paper Case* that that which was inherently legal can be rendered illegal by considering in connection with it something which there is no right to consider at all. But it is apparent on the face of the opinion in the *Continental Wall Paper Case* that it affords no ground for the extreme and contradictory conclusion thus deduced from it since the ruling in that case was based not upon any supposed right to import into a legal and valid contract elements of wrong which there was no right to consider, but was rested exclusively upon elements of illegality inhering in the particular contract of sale in that case which elements of illegality may be thus summarized: (a) the relations of the contracting parties to the goods sold, (b) the want of real ownership in the seller, (c) the peculiar obligations which were imposed upon the buyer, and (d) the fact that to allow the nominal seller to enforce the payment of the price would have been in and of itself directly to sanction and give effect to a violation of the Anti-Trust Act inhering in the sale. It is not necessary to analyze the facts and issues in the case for the purpose of pointing out how completely they are covered by the statement just made because the opinion of the court and the reasons stated by the members of the court who dissented without more make that fact perfectly clear. Indeed not only does this statement make clear the fact

that there is no conflict between the *Connolly Case* and the *Continental Wall Paper Case*, but it also establishes that both cases, the first directly, and the other by a negative pregnant, demonstrate the want of merit in the contentions here insisted upon.

It only remains to say that we think it requires nothing but statement to demonstrate that in view of the facts which we have recited and the legal principles which we have applied to them, no error was committed by the court below in refusing to give to the defendant a judgment for its alleged share of the profits for the year 1908 when it was expressly admitted that the conditions upon which the offer of a right to a participation in the profits was rested, or the contract (if there was a contract to that effect) was based, had not been complied with.

*Affirmed.*