Graham, Judge,
delivered the opinion of the court:
Philipsborn’s, the predecessor of -the plaintiff, was engaged in the mail-order business, and on December 11, 1919, had on hand 4,326 money orders, the face value of which aggregated $29,396.37. These orders were given to a messenger, with a typewritten deposit slip containing only the amount *87 of each order, to deposit in bank. A copy of the deposit slip was retained, and each of the orders was stamped with the name of the bank where they were deposited- The messenger was robbed on his way to the bank, and the orders were never recovered, nor does it appear what became of them.
It was necessary under the provisions of the law for Philipsborn’s to produce proof to the Postmaster. General before duplicate orders could be issued. The provisions of the statute are quoted further on. The law allowed a year from the last day of the month of issue within which the Postmaster General might issue duplicates upon satisfactory proof and identification of the lost orders.
It appears that Philipsborn’s presented to the Postmaster General certain facts as proof on 2,126 of these orders. Of these, the Postmaster General apparently held that only 908 were established by satisfactory evidence as having been issued and not paid, and for this number issued duplicate orders in March, 1920. It does not appear that as to the balance of the 4,326 orders there was any proof submitted other than the amount of each order and possession.
After the expiration of the one-year period fixed by the statute within which duplicate orders could be issued, plaintiff, on October 18, 1921, filed a claim with the Post Office Department covering the balance of the lost orders other than the 908, and after numerous conferences and correspondence the claim was, on December 4, 1923, denied. The plaintiff is suing for the face value of the said balance of the orders.
There is a suggestion in the plaintiff’s brief of a recovery on the ground of a promise implied in law that is to say, that the Government has the plaintiff’s money without right and there is a promise implied to return it. This goes upon the assumption that the plaintiff has identified these money orders, and that none of them has been presented or paid, which is the very matter in dispute.
So that a recovery here is upon an express contract growing out of the issuance of the money orders and the receipt of the money by the Government. The money-order system is a creature of a statute, and all parts of the statute neces *88 sarily become a part of the contract between the Government and the receiver of the order as well as the payee. The establishment of the system was, of course, a voluntary act of the Government for the convenience of the public, and, as it had a right to do, it made such provisions as it saw fit as to the issuance and payment of the orders and in other particulars, and especially with regard to payment of lost orders. It provided what proof was necessary before the Postmaster General had authority to issue a duplicate and the time within which it coujd be done, and it provided the conditions upon which, after the expiration of this time, a warrant for payment could be issued, the proof required, and the tribunal which was to decide when that proof was satisfactory. That tribunal was the Postmaster General. The applicable statutes [1] in this regard will be found in the footnote.
The act of January 27, 1894, quoted below, provides that warrants may be issued on the certificate of the Auditor of the Treasury for the Post Office Department, or upon other proof satisfactory to the Postmaster General, that the order has not been paid. It does not appear that such proof was presented to the Postmaster General. If a certificate had been produced and the Postmaster General had refused to issue the warrant, the plaintiff’s relief would have been *89 in another court to compel his performance of the act. If the refusal was due to what the Postmaster General considered unsatisfactory proof, this court would have no jurisdiction because a disputed question of fact would be involved, the decision of which has been placed by the statute in the discretion and judgment of the Postmaster General. Shook v. United States, 61 C. Cls. 816, 820; United States v. Bab-cock, 250 U. S. 328, 331. And this last is also true with regard to the provisions of the act of May 27, 1908, also quoted in the footnote, which uses the language:
“ That the Postmaster General, upon evidence satisfactory to him, and under such special regulations as he shall prescribe, may cause payment to be made.”
The act provides in the case of lost orders a right and a remedy. See Shook and Babcock cases, supra; Wilder Manufacturing Co. v. Corn Products Co., 236 U. S. 165, 174, 175, and cases there cited. The United States can not be sued without its consent expressly given. No consent has been given by this act. The act contains no language giving jui'isdiction to this court to consider such a claim as this or review the decision of the Postmaster General. The case must rest within the four corners of the acts creating and regulating the post-office money-order system, and the issuance and payment of warrants for lost money orders are placed within the judgment of the Postmaster General or under rules and regulations issued by him. Payment for a lost money order can only be secured by proof satisfactory to him. Whether in a case where the proof was admittedly satisfactory this court would have jurisdiction, it is unnecessary to decide.
No satisfactory proof appears in the findings identifying these orders or demonstrating that they have not been paid. When the plaintiff gave the orders to the messenger for deposit it retained only a copy of the deposit slip, and it does not appear that it kept any record of the number of the order, the name of the remitter or of the post office from which it was issued, or its date. Had it done so there would have been little difficulty in adjusting the matter with the Postmaster General, as the said act of January 27, 1894, *90 provides that the Postmaster General may issue a duplicate provided he is furnished a certificate from the postmaster by whom the order was issued that it had not been and would not be paid thereafter, and a similar certificate from the postmaster by whom it was payable that it had not been and would not be paid thereafter. There is no proof showing by what office the orders were issued or at what office payable, who the remitters were, the dates or numbers of the orders, or any certificates as to nonpayment from either the issuing or the paying office. So that, even if we did not hold, as we do, that this court is without jurisdiction, there could be no recovery under the facts.
The facts found show that the plaintiff at the time of the theft of the orders, December 11, 1919, was a corporation, under the laws of what State does not appear; that, after assigning the claim to the insurance company it in 1922 sold and transferred its business to Philipsborn’s, a Delaware corporation, at the same time changing its name to the Former Corporation, plaintiff in this cause; that thereafter the said Former Corporation went into the hands of a receiver and has not since conducted business.
Judgment should be entered in favor of the defendant and the petition dismissed, and it is so ordered.
Green, Judge; Moss, Judge; and Booth, Chief Justice, concur.

 Sec. 11, act of January 27, 1894, 28 Stat. 30, 33 :
“ whenever a money order has been lost within one year from the last day of the month of issue the Postmaster General, upon the application of the re-mitter or payee of such order, may cause a duplicate thereof to be issued, without charge, providing the person losing the original shall furnish a certificate from the postmaster by whom it was payable that it has not been, and will not thereafter be, paid; and a similar certificate from the postmaster by whom it was issued that it has not been, and will not thereafter be, repaid.
“ Whenever a money order which has not been paid within one year from the last day of the month of issue, has been lost, the Postmaster General, upon the application of the remitter or payee of such order, shall issue a warrant for the payment thereof, as provided for in section four of this act, without charge, on the certificate of the Auditor of the Treasury for the Post Office Department, or upon such other proof satisfactory to the Postmaster General, that the order has not been paid.”
Act of May 27, 1908, 35 Stat. 406, 416 :
“ That the Postmaster General, upon evidence satisfactory to him, and under such special regulations as he shall prescribe, may cause payment to be made in the manner prescribed in sections four and eleven of the act approved January twenty-seventh, eighteen hundred and ninety-four, of the amount of any domestic money order remaining unpaid after the lapse of three years from the date of its issue. And It shall hereafter be the duty of the Auditor for the Post Office Department to maintain a complete and permanent record of all unpaid money orders issued by postmasters in the united States, or such of its insular possessions as are amenable to the authority of the Postmaster General for payment within its own territory, such record to serve as a basis for adjudicating claims for payment by warrant of the amounts of said orders.”