## HARPER v. SOUTHERN COAL & COKE CO.

### No. 7404.

Circuit Court of Appeals, Fifth Circuit.

Nov. 27, 1934.

Hugh A. Locke and Andrew W. Griffin, both of Birmingham, Ala., for appellant.

Borden Burr, of Birmingham, Ala., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This action was brought by the appellant against the appellee in an Alabama state court, and was removed by the appellee to the court below. Appellant's complaint contained two counts. The first count, after alleging that six years ago an agreement of indefinite duration was entered into by and between appellant and appellee whereunder appellant was to do work and labor for appellee at a named coal mine, for which work and labor appellant was to be paid 22½ cents per hour, payment to be made semimonthly, and performance by appellant of the work and labor contemplated by said contract down to the 19th day of June, 1933, alleged that on the last-named date appellee "wrongfully and unlawfully breached said agreement in this: it discharged the plaintiff on said occasion in violation of section 7(a) of the National Industrial Recovery

Act approved * * * on the 16th day of June, 1933 (15 USCA § 707(a), which said provision of said act was in force and effect on said date, and reads as follows: 'Every code of fair competition, agreement and license approved, prescribed, or issued under this title shall contain the following conditions: (1) That employees shall have the right to organize and bargain collectively through representatives of their own choosing, and shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; (2) that no employee and no one seeking employment shall be required as a condition of employment to join any company union or to refrain from joining, organizing, or assisting a labor organization of his own choosing; and (3) that employers shall comply with the maximum rates of pay, and other conditions of employment, approved or prescribed by the president.' " That count alleged that said discharge was willfully, wrongfully, and unlawfully made on account of the fact that appellant on the day before said discharge had become a member of the United Mine Workers of America, a labor organization of appellant's own choosing. That count contained allegations as to loss and injury to the appellant proximately resulting from the alleged breach of agreement, and claimed damages therefor in the sum of $50,000. The second count was quite similar to the first one. Appellee filed a demurrer to the complaint, setting out sundry grounds, including the following: It does not appear that the defendant was guilty of any wrongful or unlawful act in discharging plaintiff from its employment. It does not appear from the complaint that at the time of plaintiff's discharge defendant was under any Code of Fair Competition approved by the President of the United States under section 3(a) of the National Industrial Recovery Act (15 USCA § 703(a). It does not appear from the complaint that at the time of plaintiff's discharge defendant was under any agreement with the President under section 4(a) of the National Industrial Recovery Act (15 USCA § 704(a). It affirmatively appears that section 7(a) of the National Industrial Recovery Act conferred no individual right of action upon the plaintiff for that section 7(a) of the National Industrial Recovery Act, if it imposed any duty upon the defendant, was a duty imposed for the benefit of the public and for the purposes as set forth in the act and did not confer upon the plaintiff any individual cause of action. For that the enforcement of any penalty prescribed under or by the National Industrial Recovery Act is imposed exclusively upon the several District Courts of the United States. For that the National Industrial Recovery Act provides that actions in reference to violations thereof shall be brought by the United States acting through its District Attorneys and not by any individuals and precludes any actions by any individuals. For that the National Industrial Recovery Act provides the means for the administration of the act and the enforcement of Codes of Fair Competition promulgated under it and for settling controversies between employers and employees relative to organized and collective bargaining, and it does not appear that the plaintiff has exhausted the administrative features of said act as a remedy for his wrongs before the filing of his suit. It affirmatively appears that the Code of Fair Competition for the Bituminous Coal Industry was approved by the President on September 18, 1933, and that plaintiff was discharged prior to such time. The court sustained that demurrer, and, upon appellant declining to plead further, dismissed the suit. The action of the court in sustaining the demurrer to the complaint was assigned as error.

The complaint does not show that the alleged discharge of the appellant by the appellee was a breach of any provision of the alleged contract of employment, which, being of indefinite duration, was subject to be terminated by either party at any time and for any or no cause, unless the termination of it was in violation of some statute. The asserted right to maintain the suit is based upon the above set out provision of the National Industrial Recovery Act. The complained of discharge of the appellant occurred on June 19, 1933, three days after the approval of the National Industrial Recovery Act on June 16, 1933, and before the approval by the President of any code of fair competition for a trade or industry or subdivision thereof. The language of that act makes it quite plain that the provisions or conditions which by section 7(a) thereof (15 USCA § 707(a) are required to be embodied in every code of fair competition were not intended to be operative or effective in a trade or industry prior to the approval by the President of a code of fair competition for that trade or industry.

That act provides for the President approving a code or codes of fair competition for a trade or industry or subdivision thereof, upon the application to the President by one or more trade or industrial associations or groups, or, under stated conditions, upon the President's own motion (section 3 (a, d) of the act, 15 USCA § 703 (a, d); that "after the President shall have approved any such code, the provisions of such code shall be the standards of fair competition for such trade or industry or subdivision thereof" (section 3 (b) of the act, 15 USCA § 703 (b); that "The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations" (section 3 (c) of the act, 15 USCA § 703 (c); for the President being authorized to enter into agreements with, and to approve voluntary agreements between and among, persons engaged in a trade or industry, labor organizations, associations, or groups, relating to any trade or industry, and, subject to stated conditions, to require a license to carry on any business in or affecting interstate or foreign commerce (section 4 (a, b) of the act, 15 USCA § 704 (a, b); for approved codes, agreements, or licenses, while in effect, being exempt from the provisions of the anti-trust laws of the United States (section 5 of the act, 15 USCA § 705); and for the filing of required statements as prerequisite to receiving benefits of the act (section 6 (a) of the act, 15 USCA § 706(a). Immediately following the last-mentioned of the above referred to provisions of the act was the provision (section 7 (a) of the act, 15 USCA § 707 (a) which is set out in appellant's complaint.

Instead of anything contained in the act furnishing support for the conclusion that the provisions or conditions required to be contained in a code, agreement, or license provided for were intended to be in existence or enforceable prior to the coming into existence of such code, agreement, or license, explicit provisions of the act show that those provisions were not intended to become effective and enforceable prior to the taking by the President of prescribed action to put into effect a code, agreement, or license which is required to contain those provisions. Nothing contained in the act indicates that the approval by the President on September 18, 1933, of a Code of Fair Competition for the Bituminous Coal Industry, which contained the provision set out in appellant's complaint, had, or was intended to have, the retroactive effect of rendering illegal on June 19, 1933, the act of an employer in that industry in discharging an employee.

Even if section 7(a) of the National Industrial Recovery Act properly could be regarded as conferring upon the appellant, from the time of the approval of that act, a right which was violated by his alleged discharge by appellee, appellant was without right to maintain the action as brought. The provision of the act as to the enforcement of it (section 3 (c), above set out) is substantially a literal copy of the first sentence of section 4 of the Sherman Anti-Trust Act of July 2, 1890 (15 USCA § 4). It reasonably may be inferred that the language used was chosen because the meaning of it had been settled by authoritative decisions to the effect that the remedies which, by the use of that language, the act provides for violations of it are exclusive, with the result that a suit by a private party for a violation of the act is not maintainable, and that no suit for a violation of the act brought in any court other than a District Court of the United States is maintainable, though such suit is removed to a District Court of the United States. Small Co. v. Lamborn & Co., 267 U. S. 248, 252, 45 S. Ct. 300, 69 L. Ed. 597; General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U. S. 261, 287, 288, 43 S. Ct. 106, 67 L. Ed. 244; D. R. Wilder Mfg. Co. v. Corn Products Ref. Co., 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; Paine Lumber Co. v. Neal, 244 U. S. 459, 37 S. Ct. 718, 61 L. Ed. 1256. The just-stated conclusion is in harmony with several decisions rendered by District Courts. Progressive Miners, etc., L. Union v. Peabody Coal Co. (D. C.) 7 F. Supp. 340; National Foundry Co. v. Alabama Pipe Co. (D. C.) 7 F. Supp. 821; Western Powder Mfg. Co. v. Interstate Coal Co. (D. C.) 5 F. Supp. 619; Purvis v. Bazemore (D. C.) 5 F. Supp. 230.

In argument counsel for the appellant referred to the decision in the case of Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U. S. 548, 50 S. Ct. 427, 74 L. Ed. 1034, in support of the contention that appellant was entitled to maintain his suit. The right which was asserted in that case was one which was created unconditionally, not contingently, by a provision of the Rail-

way Labor Act of 1926 (45 USCA § 152). That act dealt with disputes between common carriers and their employees, and imposed certain definite obligations, including one which is found in the provision of subdivision 3 of section 2 that "Representatives, for the purposes of this Act, shall be designated by the respective parties " * * without interference, influence, or coercion exercised by either party over the self-organization or designation of representatives by the other" (44 Stat. 577); and the act contained no provision as to the remedy or method of enforcing the right created by the quoted provision. The court decided that the quoted provision created definite legal obligations which were enforceable by appropriate proceedings. The facts of that case are materially different from those of the instant one, in that the right which was asserted in the former was in existence from the time of the enactment of the statute creating it, which statute provided no remedy for the enforcement of that right; while in the latter the right asserted was one which, by the terms of the statute providing for it, was not to come into existence until the happening of an event which might or might not occur after the enactment of the statute, which statute prescribed the method and agency for the enforcement of that right in the event of its coming into existence. The decision under consideration does not support the contention that appellant was entitled to maintain his action.

The above-mentioned ruling was not erroneous.

The judgment is affirmed.

HUTCHESON, Circuit Judge, concurs in the result.