### WEST 52ND THEATRE CO., Inc. v. TYLER.

#### No. 75, Docket 21411.

United States Court of Appeals, Second Circuit.

Argued Nov. 11, 1949.

Decided Dec. 5, 1949.

George Stephen Leonard and Philip Handelman, both of New York City (Cravath, Swaine & Moore, Handelman & Ives, Douglas M. Moffat, and Colin C. Ives, all of New York City, on the brief), for appellants.

Edgar E. Harrison, of New York City (Van Vorst, Siegel & Smith, of New York City, on the brief), for appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The debtor in this proceeding in reorganization owns the Guild Theatre in New York City, originally occupied by the Theatre Guild, but now leased to a broadcasting system for use of the theatre proper

and to another tenant for use of the offices. It was erected in 1924 at a total cost for land and building of $1,172,441.04. The premises are now assessed by the city for tax purposes at $600,000 and the trustee has procured an appraisal from a competent real estate broker showing their present fair market value as $400,000. The theatre has a seating capacity of 956 and is designed only for plays, having no orchestra pit or facilities making it available for musical shows. Debtor's principal liability is a first mortgage of $557,500, originally made to a savings bank, but sold by the latter for approximately $380,000 in 1946 to Dorsar Enterprises, Inc., a subsidiary of what are here termed "Shubert Theatre interests." The trustee received through the office for Dorsar's attorneys an offer to purchase the property subject to the first mortgage for $50,000 and a waiver of unpaid interest of $9,991.14, or a total of $617,491.14. The trustee's plan, as ultimately amended and approved by the court, provides for a public sale with this offer as an upset price, to be accepted if no higher bid is received. Such a plan leaves a small amount to be paid to bondholders with a junior lien, and allows no equity for the stockholders.

When the plan was filed, objections were made by the Debtor, a bondholders' committee, and a bondholder—the present appellants—who asserted that the actions of Dorsar were a part of the Shubert domination of the theatre business in violation of the antitrust laws and who asked that Dorsar's first mortgage claim be cancelled or subordinated to other claims, that Dorsar and its affiliates be examined in support of the objections, and that the Debtor be required to sue Dorsar, its officers, directors, and affiliates for treble damages for such violations. The court denied these motions, and first approved the plan and then, after the required acceptances by more than the necessary number of claimants were received, confirmed it. This appeal followed.

Appellants' contentions are based upon the asserted facts that the Shuberts own or control most of the first-class legitimate theatres in the major cities of the United States other than New York and that they own or control approximately half of all such theatres in New York. They assert further that the earning power of the Guild Theatre has been diminished by Shubert domination of the theatrical business, and that the actions of Dorsar in first acquiring the mortgage at a discount and then arranging for the purchase of the premises are steps in more fully effectuating the illegal monopoly. Appellants rely principally on In re American Fuel & Power Co., 6 Cir., 122 F.2d 223, and Columbia Gas & Elec. Corp. v. United States, 6 Cir., 151 F.2d 461; Id., 153 F.2d 101, certiorari denied 329 U.S. 737, 67 S.Ct. 48, 91 L.Ed. 636, which they read as holding that any claim purchased in violation of the antitrust laws must be subordinated in reorganization proceedings and hence that all possible violations of the antitrust laws should be investigated under the direction of the reorganization court.

We do not think that those precedents are relevant to this case. In the cases cited Columbia Gas & Electric's purchase of the bonds was merely a phase of a long and vicious course of operations which were patently illegal and greatly to the detriment and injury of American Fuel & Power Co. Mere illegality in the purchase of a claim would not require subordination of the claim absent the elements of fraud and actual injury to the debtor. 6 Collier on Bankruptcy § 9.15, 14th Ed. 1947. And the Sixth Circuit held that the purchase of bonds and stock control by itself did not adversely affect the interests of the debtors and their creditors, and thus require subordination of Columbia's claims, but that "the exercise of the power which such purchase and control gave to Columbia in the manner and for the purpose in which it was exercised, clearly affected such interests adversely." Columbia Gas & Elec. Corp. v. United States, supra, 151 F.2d at page 469.

Thus even if we assume the truth of appellants' allegation that the first mortgage here was purchased in violation of the antitrust laws, this fact alone would

not prevent enforcement of the mortgage contract. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679; D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520, Ann.Cas.1916A, 118; A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597; Bruce's Juices v. American Can Co., 330 U.S. 743, 755, 67 S.Ct. 1015, 91 L.Ed. 1219.[1]

 Nor do we think that Judge Goddard abused his discretion in refusing to order an investigation of possible rights of action which the debtor might have against the creditor. The trustee's showing that of the ten hit non-musical plays then on Broadway, seven were in independent theatres went far to rebut the charges of a Shubert monopoly prejudicial to this debtor, as did the evidence that the rental being received for the Guild Theatre is substantially higher than the rental received by the two Shubert theatres similarly leased. This tends to support the conclusion that in the poor state of the theatre business in New York generally, this theatre has fared certainly no worse than the others, and that the Shubert theatres have not profited, at least in New York City, to the extent imagined by appellants. We agree with the district court's finding that the charges of monopoly are "merely conclusions and surmises, and rather weak ones at best." They certainly did not make a sufficiently strong prima facie case to justify tying up this reorganization for an indefinite period of time, and endangering the best plan of disposition of the property which has yet appeared, one approved by 164 in number of the 188 claimants. As ultimately confirmed, the plan provides for the retention and enforcement by the trustee of all claims surviving the plan. Hence if a better showing of opportunities to recover damages can be made in the future, there is no apparent reason why they may not be exploited. True, the sale to Dorsar's representative

will not aid, and may well hinder, such a venture. Even so, the judge was justified in holding the chances of success, on any showing here made, too indifferent to warrant jeopardizing the actual offer in hand.

Affirmed.

---

1. The question as to the continued vitality of the Connolly case discussed in Tigner v. State of Texas, 310 U.S. 141, 144–147, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321, concerned a different issue, that of equal protection of the laws.