## ACORN IRON & SUPPLY CO. v. BETHLEHEM STEEL CO.

Civ. No. 12062.

United States District Court,
E. D. Pennsylvania.

April 13, 1951.

Isidor Ostroff, Philadelphia, Pa., for plaintiff.

Philip H. Strubing, Philadelphia, Pa., for defendant.

CLARY, District Judge.

This is an action for an injunction to restrain violation of an asserted right under the Defense Production Act of 1950, 50 U.S.C.A.Appendix § 2061, et seq., and for damages resulting therefrom. The pleadings consist of a complaint, together with a motion for preliminary injunction, supported by affidavit. Defendant has moved to dismiss the complaint on the ground that the plaintiff has no standing, as an individual, to seek either injunction or damages. I agree, and defendant's motion to dismiss must, therefore, be granted.

The Defense Production Act of 1950 provides, among other things, for allocation of materials by producers to distributors, and further provides that producers must sell on a percentage basis to distributors for civilian uses the same proportion of their output available for such uses as was purchased by those distributors during a specified base period. Plaintiff's complaint alleges, and the allegations must be taken as true for the purposes of defendant's present motion, that pursuant to a proper allocation order defendant advised plaintiff that its allocation was some ninety tons of steel per month. Plaintiff thereafter submitted its order for 90 tons and defendant has wrongfully withheld the material so allocated and ordered.

On the present state of the record, there is no question that defendant is violating the duties imposed upon it under the Act and regulations and that such violation is resulting in a detriment to the plaintiff.

Since the Act imposes duties on the defendant in derogation of its common law right to sell or refuse to sell to any one for any or no reason, the Act must be strictly construed. Where a statute imposes new duties or creates new rights, the penalties and remedies must be found within the statute. Wilder Mfg. Co. v. Corn Products Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520; Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 35, 23 L.Ed. 196.

Examining the Act in question, the only sanctions therein imposed are criminal penalties and injunctive process at the request

of the President through the persons or agencies to whom he has delegated the powers and authority conferred upon him by the Congress. The wording of the Act itself is clear in this regard. Section 103, 50 U.S.C.A.Appendix, § 2073, imposes criminal penalties. Section 706(a), 50 U.S.C.A. Appendix, § 2156(a), provides for injunctive and other relief and clearly limits the power to apply for this drastic relief to the President. Furthermore, in Section 706(b), 50 U.S.C.A.Appendix, § 2156(b), the Act provides: "All litigation arising under this Act or the regulations promulgated thereunder shall be under the supervision and control of the Attorney General".

The plaintiff argues that "all litigation" should be construed "all litigation on behalf of the United States". He bases his argument upon the fact that a House bill provided for the conduct of litigation by the legal staffs of the various agencies created under the Act. This proposal was eliminated in the final Conference Report which placed all litigation in the hands of the Attorney General. Had the Congress intended the result contended for by plaintiff, it would have been an easy matter to so provide and in very simple words. That this was not the intent of the Congress is apparent from the Act as a whole and from the legislative history as gleaned from Conference Reports and the Congressional Record. The plain meaning of the words used is wholly consistent with the policy expressly declared by the Congress in Section 2, 50 U.S.C.A.Appendix, § 2062. The Defense Production Act was intended primarily to provide for the national defense and for a more stable civilian economy in a period of strain on productive capacity due to the present international situation. The determining of such a policy must of necessity be left to the Congress, and the Congress wisely provided that its administration be entrusted to a central agency which is charged with the duty of conducting rather extensive studies of the economic and industrial situation with power to formulate rules and regulations to effectuate the policy set forth in the Act. From the statute and the legislative history it is apparent that Congress sought to and did effectively limit the enforcement of the Act and effectuation of its policy to the President and those to whom he duly delegated his powers.

 Since any remedy of the plaintiff must be found within the Act, and since the Act and regulations thereunder do not provide for any private right of action, there is no difficulty in determining that the Court lacks jurisdiction of this action and defendant's motion to dismiss must be granted. If the plaintiff is aggrieved by defendant's conduct his recourse is to the National Production Authority and, if circumstances warrant, through it to the Courts. See Notes: Defense Production Act, Vol. 51, Col. Law Rev. 350 et seq.