**John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs,**

v.

**SEANOR COAL COMPANY, a corporation, Defendant.**

**Civ. A. No. 65–861.**

United States District Court W. D. Pennsylvania,

July 14, 1966.

Kenneth J. Yablonski, Washington, Pa., Val J. Mitch, Harold H. Bacon, T. G. Dudley, Washington, D. C., for plaintiffs.

James Q. Harty, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

This case is presented on Plaintiffs' Motion for Summary Judgment. Plaintiffs are Trustees of the Welfare and Retirement Fund of 1950 of the United Mine Workers of America and sue for royalties claimed by reason of the production of coal by Defendant under the provisions of the National Bituminous Coal Wage Agreement of 1950, as amended effective April 2, 1964, [herein called the Agreement] executed between Defendant and the United Mine Workers of America. The royalty claim is for forty (40¢) cents per ton on 95,277.32 tons of coal produced between February 1, 1965 and June 30, 1965, in the amount of $38,110.93. This claim constitutes Count Two of Plaintiffs' Complaint. Defendant admits the production of this amount of coal during the period in question, but denies that it is obliged to pay the royalty because of the defenses raised.

Plaintiffs in a separate count [Count I of the Complaint] also claim the balance due of $52,441.82 under a promissory note from Defendant to Plaintiffs under which Defendant agreed to pay monthly installments. The note contained an acceleration clause providing that in the event of Defendant's default in the payment of any installment due under the note, or in the event of default in making royalty payments under the Agreement, the entire balance on said note became due and payable forthwith. Defendant admits the amount remaining unpaid on the note as claimed but denies that it is presently due and payable because of the defenses raised.

Defendant's Answer raises the following defenses as a matter of law to both Counts of plaintiffs' claim:

1. [Second Defense]. The Welfare and Retirement Fund Clause of the Agreement is illegal under § 8(e) of the National Labor Relations Act, 29 U.S.C.A. 158(e).

2. [Third Defense]. Plaintiffs are barred by the doctrine of equitable estoppel by reason of the representations made by the United Mine Workers of America upon which Defendant relied in reopening its mines.

In its brief and argument Defendant added to its Second Defense of illegality a charge that the Agreement is violative of the federal anti-trust laws. Defendant has also argued that the facts alleged in support of its Third Defense constitute a subsequent oral modification of the Agreement.

Based on its defense of illegality of the Agreement, Defendant asserts a counterclaim for $88,322.20 for payments which it has already made to Plaintiffs' Fund under the 1964 Agreement. Plaintiffs admit receipt of this amount.

Plaintiffs have moved for Summary Judgment on their claim and in their favor as to Defendant's counterclaim on the grounds that as to the defenses raised there is no genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law.

In considering the Motion for Summary Judgment we take all reasonable intendments and inferences from the pleadings against the movant and in favor of the opponent.

## I. *The Illegality Issue.*

Defendant's Second Defense is based upon the decision of the National Labor Relations Board issued May 14, 1964, in the case of United Mine Workers and Bituminous Coal Operators, 148 N.L. R.B. No. 31, which held the Welfare and Retirement Clause of the 1964 Agreement illegal as violative of § 8(e) of the National Labor Relations Act. The particular provision of the Welfare and Retirement Clause in issue there was the provision of the 1964 Amendment which provided:

"On all bituminous coal procured or acquired by any signatory Operator for use or for sale [i. e. all bituminous coal other than that produced by such signatory Operator] there shall, during the life of this Agreement, be paid into such Fund by each such Operator signatory hereto or by any subsidiary or affiliate of such Operator signatory hereto the sum of eighty cents (80¢) per ton of two thousand (2,000) pounds on each ton of such bituminous coal so produced or acquired on which the aforesaid sum of forty cents (40¢) per ton has not been paid into said fund prior to such procurement or acquisition."

The National Labor Relations Board decision was in response to a Motion by the United Mine Workers of America to declare the 1964 Amendment containing the above new provision to be valid under § 8(e) of the National Labor Relations Act, and thus to find the United Mine Workers of America in compliance with the terms of a prior cease and desist order. The motion was refused, and the specific question is still pending. Neither the Board nor any Court has ruled the 1964 Welfare and Retirement Clause to be illegal. A Trial Examiner on March 22, 1966, in the case of United Mine Workers of America and Bituminous Coal Operators, [Daily Labor Report, 3–22–66, No. 56–E–1] found the eighty (80¢) clause to be violative of § 8(e) of the National Labor Relations Act and issued the following recommended order:

"* * * [the parties] shall cease and desist from: (a) Maintaining, enforcing, or giving effect to the 80 cent provision in the 1964 Amendment to the National Bituminous Coal Wage Agreement of 1950."

Plaintiffs' present claim is not being made under the eighty (80¢) cents per ton royalty provisions, which first appeared in the 1964 Amendment to the Agreement to cover "supplementary coal", but under the forty (40¢) cent per ton royalty provision covering coal produced for use or sale, which has been part of the Agreement since 1950 [although raised from thirty (30¢) cents to forty (40¢) cents per ton during that time]. Defendant argues that the Welfare and Retirement Clause is an integrated agreement and that none of its provisions can survive if any of them are found illegal. With this we do not agree. The history of the forty (40¢) cent and the eighty (80¢) cent royalty provisions differ, the forty (40¢) cent royalty provision was in effect alone for many years before the addition of the eighty (80¢) cent provision.

"The test is whether the agreement sought to be enforced can be separated from the illegal acts or agreements relied upon as avoiding it, and whether the plaintiff requires any aid from or must in any way rely upon the illegal transaction in order to establish his case." 17 Am.Jur.2d Contracts § 219.

Under the rule of Lewis v. Benedict Coal Corporation, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), the forty (40¢) per ton royalty is part of the compensation of the miner, and is earned when the coal is produced. This being so, then the partial or even the entire invalidity of the Agreement would not alter the obligation to pay for the work already performed. In National Labor Relations Board v. Rockaway News Supply Co., Inc., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953), the Supreme Court held that while the National Labor Relations Board had determined that the bargaining agreement was void ab initio,

the contract terms under which the labor was performed must still be given effect. Similarly in International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), the Court held that the invalidity of a collective bargaining agreement because of an unfair labor practice did not vary or overturn the terms and conditions of employment fixed by the agreement.

We, therefore, conclude that the obligation of Defendant to pay the forty (40¢) cents per ton royalty on coal already mined is not altered or affected by allegations that the Welfare and Retirement Clause contains a provision for an eighty (80) cent per ton royalty which is illegal as an unfair labor practice.

■ In addition, we do not find it within the jurisdiction of this court to pass upon the allegation that the entire Welfare and Retirement Clause of the Agreement is an unfair labor practice, and thus illegal. This is a matter within the exclusive jurisdiction of the National Labor Relations Board. Pennington v. United Mine Workers of America, 325 F.2d 804 (6th Cir., 1963); Portland Web Pressmen's Union v. Oregonian Publishing Co., 286 F.2d 4 (9th Cir. 1960); cert. den. 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed. 2d 237; Marine Engineers Beneficial Ass'n v. Interlake Steamship Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962); Local No. 207, International Ass'n of Bridge, etc., Iron Workers Union v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963); and San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ While not raised in its Answer, Defendant argued a question of illegality of the Agreement because of possible violation of the anti-trust laws. We feel that as to the within Plaintiffs, the Trustees of the Fund, the argument has no application. In Lewis v. Pennington, 325 F.2d 804 (6th Cir. 1963), cert. den. 381 U.S. 949, 85 S.Ct. 1796, 14 L.Ed.2d 723, the Circuit Court, in affirming the District Court's ruling that there was no evidence that the Trustees engaged in a conspiracy to violate the anti-trust laws [as distinguished from the United Mine Workers of America], stated further: (p. 818)

" * * * it was not necessary for him [the District Judge] to rule upon Phillips' contention that such a violation of the Sherman Act, if it had occurred, was a bar to the right of the Trustees to recover in this action. However, should it be that that ruling and our concurrence in it is not the correct one, we are nevertheless of the opinion that, contrary to the contentions of Phillips, the verdict of the jury was not a bar to the right of the Trustees to collect the royalty payments which had accrued under the contract on the coal already mined. Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 549, 22 S.Ct. 431, 46 L.Ed. 679; D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520."

As to Defendant's Second Defense, the alleged illegality of the Welfare and Retirement Clause of the Agreement, we find that there is no genuine issue as to any material fact, and that the plaintiff is entitled to judgment as a matter of law with respect to the legal sufficiency of the defense raised.

Defendant's Counterclaim, being based upon the same allegation of illegality as presented in Defendant's Second Defense, must likewise fail as a matter of law.

II. *The Estoppel—Modification Issue.*

Defendant's Third Defense to both Counts of the Complaint raises allegations of fact that in February 1965 defendant permanently closed its mining operations, and that following the closing the President of District 3 of the United Mine Workers of America met with Defendant's officers and urged Defendant to reopen its mining operations. Defendant replied that its operations could not reopen unless there was sufficient increase in productivity of the employees to permit it to pay the royalties

to the Trustees and eliminate further losses to the Defendant. Defendant alleges that the United Mine Workers of America District President stated that if the mines were reopened the productivity per employee would increase sufficiently to enable Defendant to meet its obligations under the Agreement. Defendant alleges that at the time it could not reasonably have determined the falsity of this representation, but that in reliance thereon it reopened its mines and the increase in productivity did not occur.

Defendant's Answer pleads that the Plaintiffs are barred by the doctrine of equitable estoppel from enforcing the royalty payments or accelerating the promissory note payments subsequent to the time of reopening the mines until the increased productivity so promised has been achieved. In its brief Defendant alleges that this representation and Defendant's action in reliance thereon form a subsequent modification of the 1964 Agreement.

For the purpose of the Motion for Summary Judgment, Plaintiffs admit that the statements were made and concedes the authority of the District President to make them.

■ What factual issue now remains in dispute? It seems to us that the courts have passed upon the legal issues raised by this Third Defense in a number of cases. Lewis v. Benedict Coal Corp. (cit. supra), established that the obligation to pay royalty was part of the miners' compensation, and was due and payable when the coal was produced, and that neither the actions of the United Mine Workers of America nor the Trustees could defeat that obligation. Nor could an alleged breach of trust by the Trustees of the Fund defeat the obligation, Lewis v. Mill Ridge Coals, Inc., 298 F.2d 552 (6th Cir., 1962). Even if the United Mine Workers of America or the Trustees were found to be in violation of the federal anti-trust laws, the Trustees can recover the royalty on the coal already produced, Lewis v. Pennington (cit. supra). The Trustees can

recover the royalty despite a plea of fraud in the inducement of the execution of the Agreement on the part of United Mine Workers of America, Lewis v. Mearns, 168 F.Supp. 134 (D.C.N.D. W.Va., 1958), affd. 268 F.2d 427 (4th Cir. 1959).

■ The oral modification claimed by Defendant here would be contrary to Federal public policy enunciated by Congress in 29 U.S.C.A. § 186(c)(5)(B) regulating the establishment of welfare trusts and requiring that their terms be specified in detail in writing. Therefore, any defense that may be made under state law or policy governing subsequent oral modification of a written contract must yield to the federal legislation which controls the field, Lewis v. Harcliff Coal Co., 237 F.Supp. 6, 8 (W.D. Pa., 1965).

■■ It was the intent of Congress that such trusts under § 302(c)(5) be separate and apart from the union and employer creating the trust. United Marine Division, etc. v. Essex Transportation Co., 216 F.2d 410 (3rd Cir., 1954). It was so held with respect to the trust in the present case. Lewis v. Quality Coal Corp., 243 F.2d 769 (7th Cir., 1957), cert. den. 355 U.S. 882, 78 S.Ct. 149, 2 L.Ed.2d 113. Nor are the beneficiaries of the trust, as third-party beneficiaries, subject to such defenses or set-offs as asserted here. Lewis v. Benedict Coal Corp., (cit. supra) held that this is not a typical third-party beneficiary contract because the promissor's interest goes beyond the promise to pay the royalty, it goes to the soundness and management of the Fund in which it assumed an equal responsibility with the Union. The Supreme Court stated, at 361 U.S. p. 470, 80 S.Ct. p. 496:

"* * * we hold that the parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to a defense against the duty assumed by the employer to contribute to a wel-

fare fund meeting the requirements of § 302(c) (5)."

█ As to Defendant's Third Defense we find no genuine issue as to any material fact. We, therefore, conclude that Defendant's defense of equitable estoppel or oral modification of the Agreement is foreclosed by *Benedict* and the cases which followed it.

█ Defendant denied knowledge in its Answer of the citizenship of the Plaintiffs for diversity purposes. Plaintiffs have filed an affidavit of citizenship which has not been contested. We, therefore, take this factual issue as admitted and find that diversity exists.

The above opinion has considered all defenses raised. There being no dispute as to the balance remaining unpaid on the note, or the amount of coal produced during the period in question, the court finds no factual question remaining open which prevents complete disposition of this matter by Summary Judgment.

### ORDER FOR SUMMARY JUDGMENT

This cause came on to be heard on the motion of the Plaintiffs for a Summary Judgment as authorized by Rule 56 of the Federal Rules of Civil Procedure, and it appearing from the pleadings, documentary exhibits and affidavits filed that there is no genuine issue as to any material fact and that the plaintiffs are entitled to judgment as a matter of law, it is ordered, adjudged and decreed that Summary Judgment be entered as follows:

1. For the Plaintiffs and against the Defendant under Count I of the Complaint in the sum of $52,441.82, with interest from July 16, 1965, at the rate of 6% per annum.

2. For the Plaintiffs and against the Defendant under Count II of the Complaint in the sum of $38,110.93, with interest from June 30, 1965, at the rate of 6% per annum.

3. For Plaintiffs and against Defendant under Defendant's Counterclaim.

with Plaintiffs' costs of action.